JAMES *v.* IRVINE.

1. DEEDS—BUILDING RESTRICTIONS—VALIDITY.
    A restriction in a deed, declaring that no structure but a dwelling, to cost at least $2,500, and to be built 15 feet from the street line, shall be erected on the land, is valid.

2. SAME—CONSTRUCTION.
    Restrictions in deeds will be construed strictly against the grantors and those claiming to enforce them, and all doubts resolved in favor of the free use of the property.

3. SAME—DOUBLE HOUSES.
    A building restriction limiting the use of the property to dwellings costing not less than $2,500, and to be built not less than 15

feet from the street line, cannot be invoked to prevent the erection of a double house otherwise complying with the restriction, several other similar ones having been erected on the same plat without objection.

Appeal from Wayne; Mandell, J.   Submitted June 16, 1905.   (Docket No. 35.)   Decided September 20, 1905.

Bill by Delbert C. James against William A. Irvine and Mina G. Irvine to restrain the erection of a dwelling. From a decree dismissing the bill, complainant appeals. Affirmed.

For some time prior to 1889, a tract of land extending west from Woodward avenue to Hamilton Boulevard, in the city of Detroit, was owned by several parties, and was platted as Duffield & Dunbar's Subdivison, containing 98 lots.   The plat was duly recorded.   After the recording of the plat, and on May 16, 1891, the parties owning the land executed a deed to Mr. Bethune Duffield, as trustee. Mr. Duffield afterwards deeded back to each original owner a certain number of lots, representing his interest in the unplatted property.   Neither the plat, nor the trust deed to Duffield, nor the deeds from Duffield to the original owners, contained any restrictions as to the character or location of the buildings to be erected thereon.

It was stipulated in writing upon the hearing below that 16 of these lots of this subdivison contained no building restrictions whatever, of which several have been sold and buildings erected thereon.

That 5 of the lots are subject to the restrictions:

"That no structure but dwellings, to cost at least $2,500 and to be built 15 feet from the street line of Euclid avenue, shall be erected thereon."

That 2 of said lots are subject to the restriction that:

"The grantee, his heirs or assigns,   *   *   *   will not erect any building upon said lots within 15 feet of the line of Euclid avenue or of the value less than $2,500, said building to be used only as dwellings with appurtenances."

That one deed, dated June 18, 1891, to one Mary Sherman, contained the restriction:

" That no building shall be erected upon said premises by said second party, her heirs, executors, administrators, or assigns, except for the purposes of a dwelling only, that any building so erected shall not be less than 15 feet from the line of Euclid avenue, and shall cost not less than $2,500, and said parties of the first part, for themselves, their heirs, executors, and administrators, and said Bethune Duffield, as trustee, for the considerations herein mentioned, hereby covenant and agree that in selling said land in said subdivision the foregoing restrictions shall be incorporated in each and every deed, and that they, the heirs, executors, administrators, and assigns, will enforce said restrictions."

That 8 of said lots are subject to the restriction:

" That said party of the second part, his heirs or assigns, are not to occupy said premises except for residence purposes, * * * and, further, that no building shall be erected within 15 feet of the street line of Euclid avenue, and to cost not less than $2,500."

That 19 of the said lots are subject to the restriction that the grantees—

" Will not occupy said premises, except for dwelling purposes, and to cost at least $2,500, and not to be erected within 15 feet of the street line of Euclid avenue."

That there are now 29 buildings erected, or in course of erection, on Euclid avenue (which extends through this subdivision), exclusive of the building involved in this case.

" That there are 13 buildings in the first block, of which 9 are buildings designed and used for the purpose of one family, 3 of which are double houses, designed and used, respectively, for two separate families, and 1 of which is a four-family flat, designed and used by four separate families; that lot No. 8, owned by defendants, and upon which they propose to erect the building complained of in this case, is situated in the first block near Woodward avenue; that there are 16 buildings in the second block, 15 of which are designed and used for one separate family, 1

of which is a two-family flat designed and used by two separate families; that lot No. 45, owned and occupied by the complainant, is situated in the second block, 8 lots west of Second avenue."

The defendants derived their title to lot 8, upon which the building in dispute is proposed to be erected, by the trust deed executed by all the original platters to Duffield, trustee, and a deed from Duffield, trustee, to Mary B. Duffield, both of these deeds being without any restrictions; deed from Mary Duffield to George A. Gregg, which deed contains the first restriction upon said lot; and a deed from Gregg to defendants, March 24, 1903, containing the following:

"Said party of the second part, for themselves and heirs and assigns, as a part of the consideration hereof, hereby agree that they will not occupy said premises except for a dwelling house, and that they will not erect any building upon said premises within 15 feet of the line of Euclid avenue, or of the value of less than $2,500."

The deed to complainant contains a similar restriction. Upon his lot he erected a dwelling house designed for one family, which is occupied by himself. The defendants had prepared plans and specifications for the erection of a dwelling house, and had let the contract, when complainant filed this bill to enjoin them from erecting a double dwelling house, upon the theory that there was a binding restriction upon all lot owners of Euclid avenue that no dwelling house should be erected for the occupancy of more than one family. The house proposed to be erected by the defendants is 35 feet wide, with a gable roof, to cost $6,500, to have all modern conveniences, to be built in a first-class manner, and designed for the use of two families; the defendants designing to live upon the first floor and to rent the second.

It was stipulated in a supplemenal record that a double house, designed for use by two separate families, had been erected on lot No. 39, situated nearer complainant's house than is the proposed building of defendants; that

said double house is now occupied by two separate families; that complainant protested and objected to said double house, but took no legal steps to prevent it; that plans for a terrace, designed for the use of three separate families, have been submitted to complainant and other residents of Euclid avenue, and that formal objections to said terrace were made, but no legal steps were taken by complainant or other residents to prevent the erection of said terrace; that building operations for the same have been commenced, excavations completed, and work is now being done upon the walls above the ground. The case was heard upon pleadings and proofs taken in open court, and the bill dismissed.

*James & Kilpatrick* (*Henry C. Walters*, of counsel), for complainant.

*Shaw, Warren, Cady & Oakes*, for defendants.

GRANT, J. (*after stating the facts*). Complainant seeks to enjoin the defendants from the erection of a dwelling house designed for two families, one on the first and the other upon the second floor. His theory is that there was a general restriction, binding upon the original owners and their subsequent grantees, that only a single dwelling house designed for one family should be erected upon each lot. The defendants have complied with the other alleged restrictions, and we need not discuss them. The restriction as claimed by the complainant would be valid. *Harris* v. *Roraback*, 137 Mich. 292; *Watrous* v. *Allen*, 57 Mich. 368. Restrictions in deeds will be construed strictly against the grantors and those claiming to enforce them, and all doubts resolved in favor of the free use of the property. 11 Cyc. pp. 1077, 1078. The principle governing restrictions of this character is not in doubt. The question is ably discussed in *De Gray* v. *Club House Co.*, 50 N. J. Eq. 329. The court, after a full discussion of the principle and the authorities, so clearly states the law (page 340) that we quote it:

"The law, deducible from these principles and the authorities applicable to this case, is that where there is a general scheme or plan, adopted and made public by the owner of a tract, for the development and improvement of the property, by which it is divided into streets, avenues, and lots, and contemplating a restriction as to the uses to which buildings or lots may be put, to be secured by a covenant embodying the restriction to be inserted in each deed to a purchaser, and it appears, by writings or by the circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject to and to have the benefit thereof, and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan, one purchaser and his assigns may enforce the covenant against any other purchaser and his assigns, if he has bought with knowledge of the scheme, and the covenant has been part of the subject-matter of his purchase."

See, also, *Sharp* v. *Ropes*, 110 Mass. 381; *McMurtry* v. *Investment Co.*, 103 Ky. 308; *Sonn* v. *Heilberg*, 38 App. Div. (N. Y.) 515; *Summers* v. *Beeler*, 90 Md. 474 (48 L. R. A. 54).

There is nothing in the plat or in the deed from the original grantors to the trustee, or from the trustee back to the original owners, to indicate any restrictions whatever. The original platters afterwards executed deeds of many lots, 16 of which contained no restrictions whatever, while others contained restrictions differing from each other, and only 1, the deed to Mary Sherman, contained any covenant or agreement to incorporate the restriction in other deeds.

Complainant sought by parol evidence to establish a common plan for the location and erection of the dwelling houses in the subdivision, and endeavored to show an understanding that a dwelling house for one family on each lot was intended. Even if restrictions could be thus established, the proof fails to establish the one contended for by the complainant. The evidence goes no further than to show that there was an understanding that the subdivision should be used for residences, and not for

business purposes. The subsequent conduct of the original grantors and their grantees shows clearly that the understanding went no further. Double houses have been built upon the same subdivision without objection, and complainant testified that he did not deem such buildings objectionable. There were such houses on the street when he bought. Is a house more objectionable because built to accommodate two families on the same floor than when one is on the floor above?

Complainant also testified that defendants' house is not objectionable in appearance, and there are other houses upon the subdivision more objectionable than theirs. One of the original owners, complainant's witness, testified that a house designed for two families was not detrimental to the street. Another witness for complainant testified that the five double dwellings then on the street are not detrimental to it. The defendants submitted their plans to complainant, and he stated that the building would look as good as two-thirds of those on the street.

If it be conceded that there was a valid restriction limiting each lot owner to "a dwelling" to be erected on his premises, we think the parties have construed that to mean a double house, or a house of two stories, to be occupied for dwelling purposes by two families, as a compliance with the restriction.

This is not a case, as in *Harris* v. *Roraback*, supra, where the restriction was to "one dwelling house to each lot," and the grantors had incorporated that restriction in every deed they executed. Neither is it a case where, as in *Gillis* v. *Bailey*, 21 N. H. 149, "in order that the buildings erected thereon may not be crowded together, but may each be surrounded by a space of open ground," it was agreed that "one single dwelling house, with a shed, barn, and other outbuildings requisite for the use of the same," should be erected.

Complainant and other lot owners, including the defendants, have placed a construction upon the language of this restriction, and must be bound thereby. Especially is this

true where the complainant shows no damage by the erection of the building.

Other important and interesting questions are raised, but this disposal of the case renders it unnecessary to discuss them.

Decree affirmed, with costs.

MOORE, C. J., and CARPENTER, MONTGOMERY, and OSTRANDER, JJ., concurred.