## Wytheville.

### E. M. WHITEHURST V. W. B. BURGESS ET ALS.

#### June 16, 1921.

1. BUILDING RESTRICTIONS—*Construction—Necessary Implication.*—
   A building restriction, such for example as that the property
   must be used for residential purposes only, need not be in ex-
   press terms but may arise by necessary implication.

2. INTERPRETATION AND CONSTRUCTION—*Necessary Implication.*—A
   thing may be forbidden by necessary implication as clearly and
   positively as by terms of express inhibition. In the discharge
   of the task of interpreting a written instrument, if it is appar-
   ent upon the whole that the instrument carries by definite and
   necessary implication a certain meaning, then the thing afforded
   or denied by that meaning may be said to be as clearly and
   definitely extended, or forbidden, as if the language used had
   been in positive and definite terms of affirmation or negation.

3. DEEDS—*Construction—Intention.*—It is a fundamental rule that
   in the construction of deeds the object of the court is to ascer-
   tain the true intention of the parties, and that in order to as-
   certain this intention, all parts of the deed should be taken and
   considered together.

4. BUILDING RESTRICTIONS—*Construction—Intention.*—Building re-
   strictions should be considered with reference to the situation
   of the property affected, and its present and prospective use,
   and construed to make effective the intention of the parties.

5. BUILDING RESTRICTIONS—*Construction—Restriction Construed to
   Forbid Buildings Other Than Residences—Case at Bar.*—
   A building restriction in a deed to lots in a land company's
   subdivision contained a provision "that no more than one res-
   idence shall be erected on a plat of land consisting of four lots."
   Deeds to all other lots in the subdivision contained similar re-
   strictions. The deeds contained other restrictions which were in-
   appropriate if the property was to be used for manufacturing,
   industrial or commercial purposes. All the restrictions together
   with other provisions of the deed considered together indicated
   an unmistakable general scheme to create a residential section.

*Held:* That the restriction excluded the use of the lots for commercial, industrial or manufacturing purposes, was within reasonable limits, and not forbidden by law.

Appeal from a decree of the Circuit Court of Norfolk county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Pender, Way & Foreman,* for the appellees.
*E. R. F. Wells* and *Wm. T. Higgins,* for the appellant.

SAUNDERS, J., delivered the opinion of the court.

This appeal by E. M. Whitehurst is from a decree of the Circuit Court of Norfolk county, enjoining the said Whitehurst (defendant below) from building a store building on four lots of land on Atlantic boulevard, south of Hanover avenue, until the expiration of twenty-one years from October 10, 1910.

These lots are in Larchmont, a subdivision in Norfolk county originally owned by the Larchmont Realty Corporation, which had caused the same to be platted into lots, blocks and streets. A portion of this area, to-wit, 840 lots, was conveyed to the Larchmont Investment Corporation by the Realty Corporation. The appellant, Whitehurst, derived his title by successive conveyances from the Larchmont Realty Corporation through the Larchmont Investment Corporation.

The Larchmont Realty Corporation, in conformity with a systematic and definite plan, laid off and platted Larchmont into building lots. The Larchmont Investment Corporation approved this plan, and confirmed and carried out the same. Many lots were sold by the Realty Corporation

and the Investment Corporation. All of the deeds made by these corporations contained numerous and identical restrictions, designed to carry out and make effective the original general plan. Whitehurst derived immediate title to his lot from T. M. Bellamy and wife, Bellamy from J. E. White and wife, White from the Investment Corporation, and the Investment Corporation from the Realty Corporation.

The deed from the Investment Corporation to White contains all the restrictions included in its deed from the Realty Corporation, and is expressly made subject to the same, which are stated to "apply and pertain generally to the property of the Larchmont Investment Corporation, and particularly to the property therein conveyed, and which are to extend for a period of twenty-one years from October 10, 1910." The conveyances from Stewart and wife to Bellamy, and from Bellamy and wife to Whitehurst, are also made expressly subject to the foregoing restrictions.

From the above recitals, it will clearly appear that Whitehurst was fully apprised of the restrictions imposed upon all building lots originally derived from the Larchmont Realty Company.

After his purchase of lots 23, 24, 25 and 26 in block nine of the plat of Larchmont, situate on the west side of Atlantic boulevard and south of Hanover avenue, Whitehurst arranged to erect four stores on the same, and proceeded to dig his foundations. Thereupon W. B. Burgess and many others, owners of lots in Larchmont, filed their bill of injunction against Whitehurst, alleging that all of the buildings in Larchmont, except churches and a public school building, were private residences; that there were no stores or other buildings used for commercial purposes within this area; that all of the owners of lots in Larchmont were observing the restrictions and conditions in the deeds to these lots; that in consequence thereof Larchmont was an ex-

ceedingly quiet, desirable, pleasant and wholesome community, devoted exclusively to home purposes; that the erection of the proposed store buildings would cause irreparable damage to the complainants, and was in direct violation of restriction number three in the deeds to the Larchmont property, said restriction being in the following words:

"That two adjoining lots will constitute a building site for one residence only, except on Surrey crescent and Atlantic boulevard, south of Hanover avenue, where four adjoining lots will constitute a building site for one residence only, and on Westmoreland and Buckingham avenues, where three adjoining lots will constitute a building site for one residence only."

Later the complainants filed a supplemental bill, and the defendant answered both bills, admitting the allegations of the same, except such allegations and averments as set up the claim that the property in question could not be used for other than residential purposes.

Upon consideration of the bills, answer, general replication and exhibits, the trial court enjoined the defendant, Whitehurst, from erecting the store buildings complained of. From this decree the present appeal was allowed.

The sole question presented for determination in this case is the interpretation of restrictive provision number three, cited *supra*. Appellant insists that the language used, to-wit, that on certain streets two adjoining lots will constitute a building site for one residence only, on other streets three adjoining lots will constitute a building site for one residence only, and on still other streets, four adjoining lots will constitute a building site for one residence only, does not prohibit the use of these lots for business purposes. Appellees maintain that by necessary implication the use of these lots for other than residential purposes is forbidden by the deed under which the appellant takes title.

The principles upon which appellant relies are that restrictions upon the free use and disposition of property are not favored, and will be strictly construed, that they should not be extended beyond the clear meaning of the language used, and that unless the thing sought to be enjoined is plainly within the restrictive covenant, an injunction should not issue. Further, that where the right of a complainant to relief by the enforcement of a restrictive covenant is doubtful, "to doubt is to deny." *Clark* v. *James,* 87 Hun. (N. Y.) 215; 33 N. Y. 1020; 13 Cyc. 687 and 713; *Stone* v. *Pillsbury,* 167 Mass. 332, 45 N. E. 768; *Underwood* v. *Herman & Co.,* 82 N. J. Eq. 353, 89 Atl. 21; *Fortesque* v. *Carroll,* 76 N. J. Eq., 583, 75 Atl. 923; *James* v. *Irvine,* 141 Mich. 376, 104 N. W. 631; *Duvall* v. *Craig,* 2 Wheat, 45, 58-9, 4 L. Ed. 180.

Applying these principles to the provision that "four adjoining lots will constitute a building site for one residence only," the appellant concludes that this language means "that no more than one residence shall be erected on a plot of land consisting of four lots." Further, that "the provision is for the benefit and protection of a person who desires to use his lots for residential purposes. It secures him light, air and space for his residence. But it does not inhibit him from using the land for other than residential purposes."

[1-2] Appellant stresses his contention that the provision cited does not in express terms provide that the "property must be used for residential purposes only." A thing may be forbidden by necessary implication as clearly and positively as by terms of express inhibition. In the discharge of the task of interpreting a written instrument, if it is apparent upon the whole that the instrument carries by definite and necessary implication a certain meaning, then the thing afforded, or denied, by that meaning may be said to be as clearly and definitely extended, or forbidden, as if the lan-

guage used had been in positive and definite terms of affirmation or negation.

[3] It is a fundamental rule that in the construction of deeds the object of the court is to ascertain the true intention of the parties, and that in order to ascertain this intention, all parts of the deed should be taken and considered together.

"Every deed is supposed to express the intention of the parties, and however unusual the form may be, it is a primary and cardinal rule of construction, that effect must be given to that intent whenever it is reasonably clear and free from doubt; and in ascertaining the purpose and object of the parties, all parts of the deed must be taken and considered together, it being a rule of law too well settled to need any citation of authority, that in the construction of any instrument, it must be construed as a whole."

*Temple* v. *Wright*, 94 Va. 338, 26 S. E. 844, cited in *Culpeper National Bank* v. *Wrenn*, 115 Va. 57, 78 S. E. 620.

[4] On the subject of the interpretation of restrictive covenants, the following authorities are in point:

"The primary rule for the interpretation of a covenant is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement, but the entire context, and where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met." *Clark* v. *Devoe*, 124 N. Y. 120, 26 N. E. 275, 276, 21 Am. St. Rep. 652.

"Restrictions must be construed so as to make the intentions of the parties effective." *Hyman* v. *Tash* (N. J. Ch.), 71 Atl. 742.

"The purpose to be achieved by the covenant should be kept in mind." *Godfrey* v. *Hampton*, 148 Mo. App. 157, 127 S. W. 626.

73

"All courts profess to give effect to the plain intention of the parties, in imposing such restrictions, and should live up to their profession in good faith instead of seeking ingenious subtleties of interpretation by which to evade such restrictions." *Sanders* v. *Dixon,* 114 Mo. App. 229, 253, 89 S. W. 577, 584.

These covenants should also be considered with reference to the situation of the property affected, and its present and prospective use.

In connection with the construction of a restrictive covenant, the Supreme Court of Michigan used the following language: "While there is authority for saying that in construing this language, we should resolve doubts in favor of the defendants, *it is none the less our duty to give said language its obvious meaning.* (Italics supplied.)

"We are to construe the language in accordance with the intention of the parties to the deed. In construing it, we should not assume that the *restriction was inserted solely for the benefit* of the grantor. (Italics supplied.) The purpose of the restriction is not merely to benefit the grantor, but every owner of property, and every resident on the street. Such a restriction assures purchasers that property will be devoted in a specified manner to residence purposes, and has a tendency to increase its value." *Harris* v. *Roraback,* 137 Mich. 292, 293, 100 N. W. 391, 109 Am. St. Rep. 681.

[5] Looking to the deeds made in the first instance by the Realty Corporation, and later by the Investment Corporation, a definite plan to make Larchmont a purely residential section is clearly apparent. If the companies concerned had contemplated a commingling of homes with buildings for manufacturing and commercial purposes, they would assuredly have omitted from their deeds, as unnecessary, the bulk of the restrictive provisions. In that view, these provisions were neither apt nor appropriate. If the use

of the property for commercial, industrial, or manufacturing purposes was intended, why provide by restriction number four that no flat roof building, whether store, warehouse, factory, or garage, should be erected on the property? The prohibition of flat roof buildings is in aid of picturesqueness, not of utility, and is appropriate to a residential, not a manufacturing or industrial district. Why did the companies concern themselves to eliminate board fences, if the buildings to be affected were not intended to be exclusively dwellings? Why provide that within an area that conceivably might be crowded with stores, factories and garages, if appellant's view is correct, no outbuilding should be erected within less than thirty-five feet of a street, or avenue, when the store, or garage itself, might be within fifteen feet of the street, or avenue?

Restriction number five provides that no building, or portion of same, shall be erected within fifteen feet of a street. It is not usual, to say the least, to find business buildings at such a distance from the streets, or avenues, of a town. The guarantee of the corporations concerned, that shade trees will be planted on all streets and avenues, is also an indication that Larchmont was intended to constitute an exclusively residential section.

Provision number three substantially subdivides Larchmont into three areas, in the first area two adjoining lots constitute a building site for one residence only, in the second area three adjoining lots constitute a building site for one residence only, in the third area four adjoining lots constitute a building site for one residence only. It is in the highest degree unlikely that the original owners of this property would have been at such pains to prescribe that one residence only should be built on two, three, or four, adjoining lots, as the case might be, and leave the purchaser free to erect on each of his lots any form of commercial building that his whim, or fancy, might suggest,

save only a flat roof building. To prohibit the building of an outbuilding within less than thirty-five feet of the street, when that outbuilding might be the owner's private garage, and permit a commercial garage to be built within fifteen feet of the street, would seem to be an incongruity. Indeed, we may say, to use the words of a court in another case, "unless the covenants under consideration are given the construction that the subdivision should be devoted to dwelling and not business purposes, they become a mere jumble of words, and their obvious intent is frustrated." The scheme of a section devoted to residential purposes, and in which the artistic fancy can indulge itself in varied forms of beautification, is an attractive one, and reasonable restrictions in aid of such a scheme should be sustained when the general purpose is apparent. We consider that the limitation of the number of lots, according to the location, to constitute a building site for one residence only, the provisions that no flat roof building, or board fences, shall be erected on the property, that no building shall be erected within fifteen feet of a street, or avenue, that no stable, or outbuilding, shall be erected within less than thirty-five feet of a street, that no swine shall be kept on the property, that shade trees will be planted on all streets and avenues, as well as other provisions of the deed, all considered together, indicate an unmistakable general scheme and purpose to create a residential section which should benefit the owners of the lots, and give them as owners of homes "good neighbors, and clean, beautiful and artistic surroundings." Further, the language used not only establishes this general purpose, but by inevitable implication it excludes any other use of the property.

We have been cited to many cases in the opposing briefs of the appellant and the appellees; a few of these are considered to be precisely in point, and being in aid of the conclusions reached will be briefly cited.

In *Powers* v. *Radding*, 225 Mass. 110, 113 N. E. 782, the deeds provided that no building should be erected nearer to Pearl street than twenty feet; that no barn should be constructed nearer than six rods to Pearl street; that but one dwelling house should be erected thereon to cost not less than $2,000, and that the other lots of the grantor on Pearl street should be subject to similar restrictions. It will be noted that the language used does not expressly prohibit the erection of buildings other than dwellings on the lots in question, or in direct terms devote these lots to residential uses. The court concluded that an unmistakable general purpose to create a residential section was indicated, and that the plaintiffs were entitled to a writ of injunction enjoining the defendant from constructing, erecting and maintaining a building which should be other than a dwelling house for one family. The conclusion that the words "but one dwelling house," excluded not only a plurality of dwelling houses, but all other buildings as well, was derived by the court by implication.

In *McNeil* v. *Gary*, 40 App. D. C. 397, 46 L. R. A. (N. S.) 1113, the restrictions provided that not more than one dwelling house should be erected on a lot; that no apartment house, or flat, should be erected thereon; that such building (*i. e.*, the one dwelling house) should not be used for manuturing, mechanical or business purposes. It was contended that while this language forbade the use of a dwelling for business or manufacturing purposes, it did not prohibit the construction in the first instance of a building designed purely for such purposes. The owner of a lot sought to erect on his lot a stable as such, for his drayage, express and plumbing business. The court held that the erection of a stable was in violation of the provisions, *supra.* On page 402 of 40 App. D. C. on page 1116, 46 L. R. A. (N. S.) cited above, we find the following: "It seems to us that no one purchasing one of these lots, and accepting a deed con-

taining these covenants, could reasonably fail to under-
stand that he could not do in one way what he was forbid-
den to do in another; in other words, that the provisions
that no more than one dwelling house should be erected on
a lot, coupled with the provision as to cost of same, and not
to be used for any other purpose, meant that this subdivi-
sion should be devoted to dwelling, and not to business pur-
poses."

This, too, is a conclusion derived by implication.

In *Hyman* v. *Tash* (N. J. Ch.), 71 Atl. Rep. 742, the re-
striction was as follows: "That no dwelling shall be erected
on this lot, except those facing upon * * * Witherspoon
street, and the front line of said dwelling house shall not be
less than fifteen feet from said street, and said dwelling
house shall be erected in the center of said lot hereby con-
veyed, and equidistant from the side line fences of the lot."
Construing this language, the court said: "A question
raised *in limine* is whether the restriction is not directed
solely against dwellings, in which case the building of stores,
and the erection of buildings other than dwellings, would
not be prohibited. This question, in my judgment, is easy
of solution. The neighborhood is a residential section, and
undoubtedly the heirs of the Murphy estate never contem-
plated the erection of business buildings on Witherspoon
street. The photographs offered in evidence show that that
idea has been acted upon by the building of cottages, by the
parties to this suit, complainants and defendants, and by
others owning property in the tract. To prohibit the build-
ing of a dwelling within fifteen feet of the street, and to
permit a store or other building to be run out to the street,
seems at a glance to be destructive of the idea that was orig-
inally entertained in imposing the restriction, which idea
has been carried out fully by all of the owners of lots."

The conclusion reached, that Larchmont was designed
as a purely residential section, and that the language used

in the deeds, fairly interpreted according to accepted principles of construction, excludes the use of these lots for commercial, industrial or manufacturing purposes, is considered to be supported by reason and authority. The deeds from the corporations contain the covenants and restrictions in full, and the deeds from White to Bellamy, and from Bellamy to Whitehurst, the appellant, are made "expressly subject to the said conditions and restrictions." These restrictions are within reasonable limits, not forbidden by law, and are binding upon the purchasers of lots in Larchmont.

We find no error in the decree complained of, and the same is affirmed.

*Affirmed.*