**ALEXANDER SCHROEDER LUMBER CO.
et al., Appellants,**

**v.**

**C. B. CORONA et al., Appellees.**

No. 12930.

Court of Civil Appeals of Texas.

Galveston.

March 15, 1956.

Rehearing Denied April 12, 1956.

Stovall, O'Bryant & Stovall, and T. J. Stovall, Jr., Houston, for appellants.

Joel W. Cook, Houston, for appellees.

GANNON, Justice.

On petition and prayer of twenty-eight original and intervening plaintiffs—all lot owners and all but three home owners in Simms Woods Addition in the City of Houston—the District Court, after a jury trial and on the verdict and "such additional considerations and findings as were required by law" commanded the defendants, Alexander Schroeder Lumber Co. and E. S. Schroeder, to remove immediately from Block 3 of Simms Woods Addition (1) a certain fence erected by them along all street frontage of said block and elsewhere thereon, (2) all cars parked thereon, (3) all lumber stacked thereon, and (4) perpetually enjoined defendants from erecting upon Block 3 of Simms Woods Addition any fence, lumber stacks or structure for business use, and generally from using said property for any business purpose. The court, on plaintiffs' prayer for declaratory relief, decreed certain restrictions to be applicable to Block 3 of the Addition and that they proscribed the erection of any fence not incidental to residential use of the property. Defendants appeal.

Defendant Schroeder holds under a deed from Texestate Corporation dated August 3, 1950. The conveyance was made subject to the easements, building lines and restrictions shown upon the recorded plat of Simms Woods Addition and as well "to the restrictive covenants common to Simms Woods and reflected of record in deed of conveyance executed by Texestate Corporation under date of May 29, 1947 * * * and * * * to the further restrictions that during the life of the recorded restrictions this property shall not be used as a site for a duplex or an apartment." The deed of May 29, 1947, referred to in defendant Schroeder's conveyance was to Charles F. Meyer and wife, and represented a sale of property in Block 5 of the addition. The restrictive covenants in the Meyer deed purported to give concrete expression to a general scheme or plan of development applicable to the entire addition. It is this general plan, its validity and proper construction which we are to determine on this appeal.

We quote some and summarize the remainder of the twelve provisions of the plan:

Provision A reads: "All lots in said Simms Woods shall be known and described as residential lots. No structure shall be altered, placed or permitted to remain on any residential building plot other than one detached one-family dwelling, not to exceed two and one-half stories in height, and a private garage with servant's quarters and other outbuildings incidental to the residential use only of the plot, with the exception that lots in Blocks Two (2) and Three (3) and Lots one (1) to Six (6), inclusive, in Block Four (4), and Lots One (1) to Five (5), inclusive, in Block Six (6), may be used either singly or jointly as sites for duplexes and apartments, and lots in Block Two (2), either singly or jointly, may be used for park or clubhouse purposes."

"B. * * * (This provides minimum costs for structures of various types, i. e., single family dwellings, duplexes and apartments designed for multi-family use.)"

"C. * * * (This establishes building lines.)"

Provision D. reads: "No residential structure shall be erected or placed on any building site, which site has an area less than 6,000 square feet or having a frontage of less than 52 feet."

Provision E. reads: "No persons of any race other than the Caucasian race shall use or occupy any building or lot, except that covenant shall not prevent occupancy by domestic servants of a different race domiciled with an owner or tenant."

Provision F. reads: "No trailer, basement, tent, shack, garage, barn, or other outbuilding erected in the tract shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residence. No garage or servants house situated on the property shall ever be occupied as a residence except by domestic servants, and then only after erection of the main building."

"G. * * * (This provides for the materials to be used in exterior walls of structures and for solid beam foundations in certain instances.)"

Provision H. reads: "An easement is reserved over the rear five feet of each lot for utility installation and maintenance."

Provision I. reads: "All power transmission lines shall be located in the easement to the rear of all properties."

"J. * * * (This provides that all covenants run with the land, for their initial duration, and for extension of the life of the covenants.)"

Provision K. reads: "If the parties hereto, or any of them, or their heirs or assigns, shall violate or attempt to violate any of the covenants herein, it shall be lawful for any other person or persons owning any real property situated in said development or subdivision to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenant, and either to prevent him or them from so doing, or to recover damages or other dues from such violation."

"L. * * * (This is a saving clause against invalidity of any particular covenant or covenants.)"

Defendants do not deny that they were using their property for business purposes, i. e., for stacking lumber and as a parking lot for cars of employees. Nor do they deny that such use runs counter to the covenants of their deed, if these covenants are broad enough in terms, or by necessary implication, to inhibit business use. But defendants contend under the so-called strict construction rule, and largely in reliance on one out-of-state authority, that while the erection of other than residential "structures" is prohibited, the covenants are too narrow to cover the *use of the land itself*. As to the fence which was continuous, seven feet high, and of cypress and redwood construction, the defendants say this was not a structure within the meaning of the restrictions, but do not claim it was incidental to residential use. Defendants complain also of alleged procedural error, which we will notice later; and say further that there was no competent evidence of any general plan or scheme. This last contention is rested solely on the proposition that at the inception of the general plan, Texestate Corporation, the owner and developer of the addition, did not hold indefeasible fee simple title to all land in the addition. Defendants evidently regard as immaterial the fact that Texestate Corporation later acquired indefeasible fee simple title to all parts of the addition it did not own at the time of the Meyer deed of May 29, 1947, since they ignore this fact. We overrule all of appellants' points.

The facts submitted to and found by the jury were: (a) prior to the Meyer deed, Texestate Corporation adopted a general plan for the development of Simms Woods Addition as a residential subdivision; (b) the plan was that evidenced by the covenants of the Meyer deed; (c) all plaintiffs, original and intervening, bought in reliance on the plan; (d) the fence in controversy

was "a structure as that word is used in the first paragraph of the restrictions set out in the deed to Charles F. Meyer." The finding is ambiguous, but its intendment is clear when applied to the pleadings and the evidence. It is manifest the jury found the fence to be of a character within prohibited and without permissible structures; (e) Block 3 of Simms Woods Addition remained suitable for residential purposes; and, (f) none of the plaintiffs has acquiesced in defendants' business use of Block 3.

We first consider the contention that there was no competent evidence of a general plan or scheme of development binding on Block 3. At the time of the Meyer conveyance, there was outstanding in Francis and Rogers under deed from Texestate, without express restrictions, and dated after the recording of the plat of the addition, an undivided one-half interest in Block 3 and in Lots 1 to 6, inclusive, of Block 2, of the addition. There is no evidence that Francis and Rogers took their deed without notice of the intention to develop and sell under the general plan of the Meyer deed. Additionally, there was undisputed testimony of a convicing character from a witness not a party to the suit that the conveyance to Francis and Rogers was in fact a mortgage to secure a loan of money to develop the addition as a residential subdivision. At any rate, by instrument dated October 22, 1947, Francis and Rogers reconveyed to Texestate the one-half undivided interest in Block 3 previously conveyed by it. By the same instrument, but again without express restrictions, Texestate conveyed to Francis and Rogers its remaining one-half interest in Lots 1 to 6, inclusive, in Block 2. However, later and by deed dated May 3, 1948, Francis and Rogers reconveyed the entire interest in Lots 1 to 6 of Block 2 to Texestate. From this statement, it is evident that at the time defendant Schroeder took his deed, no title to unrestricted property in the addition was outstanding, if in reality any indefeasible title ever was. Since Schroeder holds under an instrument expressly incorporating covenants affirmatively inuring to the benefit of all other proper-

ty in the addition, we hardly see, in the light of equitable principles, the over-all background and the third party beneficiary rule, how he is in position to make a point of the absence of a general plan. In any event, and as a matter of law, the deeds to Francis and Rogers do not, in our opinion, militate against the equities of plaintiffs where, as here, the plaintiffs and defendants hold under a common grantor by instruments plainly evidencing a concrete and specific general plan of development. It was in effect so ruled by us on weaker facts in Gordon v. Hoencke, Tex.Civ.App., 1923, 253 S.W. 629, no writ history. In that case we relied on the secure reasoning of Schmidt v. Palisade Supply Co., N.J.Ch., 1912, 84 A. 807. We quote briefly from the opinion, 84 A. at page 810: "In my view, it is immaterial when the common grantor acquires the title to any of the specific pieces of land in a general scheme, provided that at the inception of the scheme all the land involved in the controversy was contemplated and covered by the scheme, and notice is brought home to the different purchasers. If this is not held to be the law, it seems to me that gross injustice is thereby occasioned; whereas no inequity or injustice is visited upon any one by the maintenance of this principle. The defendants here had full notice of the existence of a building scheme which embraced the lands they were purchasing. Their deed contained the restriction with reference to a map. The map contained their land and the land of the complainant, together with a great deal of other land. * * * If, therefore, an owner of land projects a building scheme and includes in his project land to which he has not yet acquired title, and his scheme clearly defines the land including the land which he does not yet own, I think it proper to hold that when he acquires the land to which he did not have the title originally, and conveys it with restrictions, the purchasers of such subsequently acquired land will be answerable to the purchasers of the other land (that originally owned by the common grantor), provided there was a general building scheme of which they had notice, and the restrictions upon them are clearly defined."

■ Next, we come to defendants' insistence that the general plan does not restrict the *land itself* to residential use but only the erection of structures for any other purpose. Without laboring our views, we deem it sufficient to say that in our opinion the point is blind to the obvious intent of the plan for development of Simms Woods Addition as a residential subdivision, and as well to certain explicit content of the covenants themselves. Writings are construed in the light of all that is necessarily implied as well as by force of what is expressly set out. The rule of strict construction against the grantor is resorted to only to resolve ambiguity and as an aid by legal presumption to arriving at intent. It is not applicable in the absence of ambiguity, and even in its presence is never used as a hypercritical and overly literal tool to override the manifest object and purpose of the language of writings. The rule is but a canon of construction and is subordinate to the requirement that every part of a deed should be harmonized and given effect where possible so as to effectuate the intention of the parties. 14-B Tex.Jur., "Deeds", Sec. 125, page 572, and Sec. 133, page 582, where it is said that the rule "is properly regarded as a canon of construction, and is subordinate to the rule, already noticed, that every part of the deed should be harmonized and given effect where this can be done," so as "to ascertain and give effect to the intention of the parties as gathered from the entire instrument, together with the surrounding circumstances, * * *." What effect could possibly be given to the declaration of the general plan that "*All lots* in said Simms Woods shall be *known and described as residential lots*," if such lots are free to be used exclusively for lumber yards, parking lots, or, say, for illustration, secondhand automobile sales lots? Then too, when one looks to the whole object and purpose of the plan, it is sheer semantics to be unable to determine a clear scheme to limit the addition to residential use. There is a prohibition of all but residential structures on "any residential building plot" and by the quoted declaration above the subdivision contains no other kind. Additionally, if the plan may be said to leave room for such commercial and industrial use as may be availed of without the use of structures, then we feel that on considerations which are self-evident, home owners binding themselves to it would be made to appear as stultifying themselves.

The Amarillo court has found an intention to restrict property to residential use on far less cogent grounds than confront us here. In Ragland v. Overton, Tex.Civ. App., 1931, 44 S.W.2d 768, no writ history, the following clause of a deed considered alone was held to restrict the grant to residential use: " * * * conditioned, which is hereby agreed to by and between the parties and becomes a part of the consideration, for the hereinafter described lots that when the Vendee, his heirs, assigns or legal representatives, place improvements upon the lots herein conveyed, that the residence to be erected and thereafter maintained shall cost not less than $1,500.00, to be used exclusively for residence purposes and shall front the street known as Broadway." Note the language above quoted literally considered purports to restrict only the use of the structural improvements—not the land itself.

A factual situation somewhat more comparable to the present was involved in Whitehurst v. Burgess, 1921, 130 Va. 572, 107 S.E. 630, 633. There the general plan declared that two adjoining lots would constitute a building site for one residence only except in certain sections where three and four lots, respectively, were required. There was no express limitation of use of the land itself to residential purposes only. The court, considering the over-all plan, said: "We consider that the limitation of the number of lots, according to the location, to constitute a building site for one residence only, the provisions that no flat-roof building, or board fences, shall be erected on the property, that no building shall be erected within 15 feet of a street or avenue, that no stable, or outbuilding, shall be erected within less than 35 feet of a street, that no swine shall be kept on the property, that shade trees will be planted on all streets and avenues, as well as other provisions of the deed, all considered to-

gether, indicate an unmistakable general scheme and purpose to create a *residential section* which should benefit the owners of the lots, and give them as owners of homes 'good neighbors, and clean, beautiful, and artistic surroundings.' Further, the language used not only establishes this *general purpose,* but *by inevitable implication* it excludes any other use of the property." (Emphasis added.) 155 A.L.R. 530.

Defendants rely on Granger v. Boulls, 1944, 21 Wash.2d 597, 152 P.2d 325, 155 A. L.R. 523. That case involved a single covenant, as follows: " ' * * * the party of the second part, his heirs, administrators and assigns, shall not at any time hereafter erect, cause or procure, permit or suffer to be erected upon said premises, or any part thereof, any building or buildings to be used or occupied for any other purpose than a private residence or dwelling, and any such residence or dwelling erected thereon shall cost not less than $1,000.00, but necessary outbuildings for residence uses may be erected on said premises at the same time with, or at any time after, the erection of said residence or dwelling, and it is further expressly covenanted that no boathouse, landing or other structure shall be erected on the margin of Lake Ballinger, except for the private use of said premises, and no refuse, litter or other obnoxious matter or thing whatsoever shall be deposited in or allowed to pass into said lake from said premises.' " 155 A.L.R. 525. The court held that the restriction prohibiting the erection of certain buildings would not be extended to the use of the land itself for other than residential purposes. Though the facts in Granger v. Boulls are not strictly analogous, the decision may be prudently said to be in conflict with our holding that the instant facts evidence an intent to restrict the use of the land itself. If so, then we are simply not in accord with the majority view in Granger v. Boulls, but rather with the dissenting opinion of Chief Justice Simpson, in which Justice Millard joined, where it is said: "The clause in the deed should be construed so as to carry out the real intent in the deed, and that was to

give to the owners peace and security in their home." 155 A.L.R. 528.

▮ The defendants designate as the most essential issue in the case the question of whether the fence erected by the defendants is, as a matter of law, a structure within the interdiction of the covenant against all structures save in connection with residential use. We think it is. It is certainly a structure in the broad sense. See Stewart v. Welch, 1944, 142 Tex. 314, 178 S.W.2d 506, 508. And the prohibition of the covenant is broadly sweeping in its terms. Under the covenant, the right to erect any structure at all is strictly dependent on the terms of the proviso. The language of the proviso is searched in vain for any clear right to erect a fence even for residential use. The only structures permitted by the proviso are: (a) detached family dwellings, (b) private garages with servants' quarters, and (c) other outbuildings incidental to residential use. Certainly the fence in question is not one of these. When the rule of ejusdem generis invoked by defendants is applied to the detailed exceptions included in the proviso, it is of no help to them. Nor can we see any strength in their contention that the doctrine of enumeratio unius est exclusio alterius is of aid. While we hold that as a matter of strict legal right the general plan prohibits the erection of fences on property in the addition, we do not wish to be taken as indicating that such legal right is necessarily enforceable in equity. The law side of the docket does not concern itself with servitudes of the character under discussion. We feel that before a suitor in equity could successfully complain of a neighbor's fence in the addition involved, he would have to show something more than a trivial annoyance, but rather such a fence, as here, which, from the photographs in evidence, clearly appears to be a material detriment to the full enjoyment of their homes by residents of the addition.

▮ Defendants assert that the verdict is incomplete as a matter of law and incapable of supporting the judgment entered. Their contention seems to be that in a case such

as this it is necessary to obtain jury findings establishing "that the parking of cars by employees constitutes a violation of the restrictive covenants" and "that the stacking of lumber does so." What constitutes a violation of the restrictive covenants is a pure question of law. The facts upon which the injunction is ordered restraining the defendants from allowing the parking of cars by employees on the property, and its use for the stacking of lumber, are all undisputed. There is no contention between the parties in respect thereto. We feel that plaintiffs' "grounds of recovery" to enjoin the use of the property for the parking of employees' automobiles and for the stacking of lumber were "conclusively established under the evidence". Rule 279, Texas Rules of Civil Procedure. And we see no grounds for waiver as contended by defendants based upon plaintiffs' failure to ask for the submission of fact issues in connection with these matters.

 Defendants assign as error that the trial court permitted the jury to construe the meaning of the term "structure" as used in the first paragraph of the restrictions in the Meyer deed.

Special Issue No. 7, submitted by the court, reads as follows: "Do you find from a preponderance of the evidence that the fence erected along the northeasterly and southeasterly lines of Block Three (3) of Simms Woods by the defendants is a structure as that word is used in the first paragraph of the restrictions set out in the deed to Charles F. Meyer?" The issue was answered in the affirmative by the jury.

The defendants objected to the issue because it permitted the jury to speculate as to the meaning of the word "structure" and would permit the application by the jury of the rule of liberal construction rather than of the rule of strict construction.

We have no doubt that the manner of the submission of the issue was improper. The issue submits, if not a pure question of law, a mixed question of law and fact, and only pure fact issues should be submitted to the jury. But this is not to say that such a submission is reversible error unless the point is fully and adequately preserved under the rules. Indemnity Ins. Co. of North America v. Sterling, Tex.Civ.App., 51 S.W. 2d 788, 792. If the issue submitted was really in the case, and we have held that it was not, the improper submission of the issue could have been cured by correctly worded explanatory instruction. None was tendered by defendants. Rule 279, T.R.C.P. Actually, as we have said, we do not think the issue submitted was in the case and have concluded that by its submission the court was really seeking to determine if the fence in question was a mere trivial annoyance as distinguished from a material detraction to the full enjoyment of their residences by the complaining plaintiffs such as would support equitable relief. We are unable to find reversible error in the submission of the issue and the jury finding thereon since we are unable to see how defendants have been in any way prejudiced or harmed thereby.

 Defendants argue under their procedural points that the judgment, being one for injunction, cannot stand because it is not supported by express findings on all controlling issues. They do not cite, but we have considered, Rule 683, T.R.C.P., requiring every order granting an injunction to set forth the reasons for its issuance. The instant final judgment on the merits does not set forth the reasons for its issuance. However, we reach the conclusion that the rule applies only to ancillary injunctive relief and not to final judgments in suits, the sole object of which is to obtain a perpetual injunction. Additionally, we fail to see how defendants are prejudiced by the failure of the final judgment to show the reasons for its rendition. There is no claim that defendants are not fully aware thereof. They concede that all material facts are uncontroverted.

Affirmed.

CODY, J., not sitting