## CIRCUIT COURT OF FAIRFAX COUNTY

Max C. Ludeke

 v.

Elizabeth Heintzelman

January 29, 1998

Case No. (Chancery) 146091

BY JUDGE ARTHUR B. VIEREGG, JR.

This case frames the question of whether restrictive covenants encumbering the Heights of Penderbrook condominium development forbid unrelated adult lessees from occupying condo units. Cross-motions for summary judgment addressing this question were argued before this court on December 19, 1997. I took the case under advisement. I am now ready to rule.

This case requires the interpretation of the following restrictive covenant encumbering the Heights of Penderbrook, a condominium located in Fairfax County:

A. Each Unit and the Common Elements shall be occupied and used as follows:

No Unit or portion of a Unit shall be used other than for housing and the related common purposes for which the property was designed. Each Unit shall be used as a residence for a single family and for no other purpose. No industry, business, trade, occupation, or profession of any kind, commercial, religious, educational, or otherwise-designed, whether for profit or otherwise, shall be conducted, maintained, or permitted on any part of the property . . . .

B. Entire Units may be rented provided the initial occupancy is for a term of not less than six (6) months and such occupancy is only by the Lessee and his immediate family. No room or portion of a Unit may be rented for any period, nor shall transient tenants be accommodated. Otherwise, the Unit Owner shall have the absolute right to lease the Unit . . . .

Declaration of the Heights of Penderbrook, § XII. The complaint, Max C. Ludeke, an owner of a Heights unit, brought this cause against defendant, Elizabeth Heintzelman, another condo unit owner. Heintzelman had leased her unit to, and for occupancy by, two unrelated adults. Ludeke contended the lease violated the above-quoted covenant. During the pendency of this cause, Heintzelman's unrelated tenants terminated their lease and vacated the Heintzelman condo unit.

## I. *Is Declaratory Relief Appropriate?*

The termination of the lease by Heintzelman's tenants presents a threshold question: whether Ludeke's present suit for declaratory and injunctive relief is now moot.

The Code of Virginia authorizes circuit courts to entertain suits for declaratory relief. Va. Code §§ 8.01-184 *et seq*. Nevertheless, the Supreme Court of Virginia has made clear (i) such relief may not be afforded unless an actual dispute or controversy exists; and (ii) declaratory relief is a matter for the sound discretion of Virginia's trial courts. *Doe v. Doe*, 15 Va. App. 242, 246 (1992); *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 421 (1970); *Work v. United States Trade, Inc.*, 747 F. Supp. 1184 (E.D. Va. 1990); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255 (4th Cir. 1996).

Although the Heintzelman lease has been terminated, Heintzelman adamantly contends she is entitled to lease her condo to unrelated tenants. Ludeke therefore argues that unless this court determines the meaning of the restrictive covenant, Heintzelman may hereafter lease to future unrelated tenants in violation of the subject restrictive covenant. Since owners of the Heights condo units may lease units for terms as short as six months, Ludeke argues that if this court does not address the meaning and enforceability of the Heights restrictive covenant, he will be powerless to enforce rights guaranteed him by that covenant. Ludeke further stresses the Code of Virginia expressly states the Act "is to be liberally interpreted and administered with a view to making the courts more serviceable to the people." Va. Code § 8.01-191.

Based upon the foregoing, I conclude an actual dispute or controversy exists with regard to the meaning and enforceability of the above-quoted restrictive covenant. Irrespective of the termination of Heintzelman's most recent lease for occupancy by two unrelated adults, she continues to assert the covenant does not ban her from leasing her unit for occupancy by unrelated tenants in the future. Accordingly, the remedial policy of Virginia Code § 8.01-184 *et seq.* requires that the court address this dispute.

In *Southern Pacific Terminal Co. v. I.C.C.*, 219 U.S. 498 (1911), the United States Supreme Court held in much different circumstances that action by the respondent to discontinue an alleged violation of a right will not necessarily moot a case, if the right in dispute is subject to future, similar violations. Such is the case here. Irrespective of the termination of Heintzelman's most recent lease to two unrelated adults, the Heights restrictive covenant remains an encumbrance, limiting the rights of condo owners. Heintzelman continues to assert the right to lease her unit for occupancy by unrelated adults.

## II. *Construction of the Restrictive Covenant: Does the Restrictive Covenant Prohibit a Lease and Occupancy by Two Unrelated Lessees?*

Well-recognized rules of construction require courts interpreting restrictive covenants to adhere to the "plain meaning rule." If the plain meaning of the covenant is manifest from its constituent words, a court must accord that express meaning to the covenant. *Whitehurst v. Burgess*, 130 Va. 572, 577 (1921); *Elterich v. Leicht Real Estate Co.*, 130 Va. 224, 239 (1921).

Declaration § XII(A) limits the use of all the Heights condominium units to "a residence of a single family home and for no other purpose." Section XII(A) therefore addresses the use of all units, those both owned and leased. Section XII(B) declares that leased condo units may be occupied "only by the Lessee and his immediate family." The question becomes to what extent do §§ XII(A) and (B) affect to whom the Heights units may be leased for occupancy.

This question first depends upon an analysis of § XII(B). The wording of Declaration § XII(B) permits occupancy of units at the Heights by two classes of persons: (i) lessees; and (ii) the *immediate* family of lessees.

A literal reading of § XII(B) suggests (i) a lessee might only be a single male lessee and (ii) a leased unit might only be occupied by that male lessee and "his" immediate family. Like contracts or statutes, restrictive

covenants must be construed in accordance with their overall meaning without undue emphasis on particular words or phrases commending a tortured meaning at odds with the global meaning otherwise intended. *Whitehurst v. Burgess*, 130 Va. at 577-78. And, courts similarly must avoid covenant interpretations which eventuate in absurd results. *Id.* (noting that in construing the intentions of the parties, the court must give words their plain meaning as opposed to "seeking ingenious subtleties of interpretation"). An interpretation that owners of the Heights might lease condo units only to one male member of a family, however, reaches just such an absurd result. I find the term "his" in Section XII(B) contemplates "his, her, or their," *see generally, Snyder's Estate v. Denit*, 72 A.2d 757 (Md. 1950); *see also* 73 Am. Jur. 2d, *Statutes*, § 219; and the term "Lessee" should be construed to comprehend both the singular "lessee" and the plural "lessees." Given such a construction, the phrase "his immediate family" must be read to mean "his, her, or their immediate family." And such a construction comports with the comprehensive purpose of the covenant; its framers intended that units might only be occupied by lessees and members of their family. Furthermore, a literal construction of the words used would eventuate in a clause that patently violates the Equal Protection Clause (here discrimination based on gender), a result courts will attempt to avoid, if reasonably possible to do so. *See Merriman v. Cover, Dryden & Leonard*, 104 Va. 428, 435 (1905).

Since Heintzelman rented her condo, however, only for occupancy by her two tenants and not their families, this case concerns only the first category; and so, as stated above, it frames only the question whether two unrelated lessees might occupy a unit at the Heights. Although the issue of occupancy by the second class, the immediate families of lessees, was discussed at great length by the parties, it is neither before the court and need not be addressed.

Heintzelman contends the term "family" in Section XII(B) must be accorded "the broadest definition of family, so as to support her use of her property," Def. Heintzelman's Motion for Summary Judgment, p. 5, essentially advocating the dictionary definition "all the people living in the same house." *Webster's New World Dictionary* 505 (2d ed. 1980). The term "family," however, is expressly modified by the term "immediate." The difficulty with Heintzelman's position is that her definition fails to address the meaning of the adjective "immediate," the use of which clearly is intended to narrow the meaning of the noun it modifies, "family," *Black's Law Dictionary* defines "immediate family" in only one way: as a term

generally referring to one's parents, wife or husband, children, and brothers and sisters. *Black's Law Dictionary* 750 (6th ed. 1990).

The language of Declaration § XII(B) therefore does not purport to limit the occupancy of condo units at the Heights by lessees. It only limits which non-leasing persons may occupy condo units, *viz.*, the "immediate" family of lessees. This reading is confirmed by the next sentence: "Otherwise, the Unit Owner shall have the absolute right to lease the Unit." Since § XII(B) expressly addresses who may occupy a leased unit, and since it does not purport to limit the occupancy of units by lessees, I conclude that the Heights restrictive covenants do not prohibit the occupancy of condo units by unrelated lessees.

In construing Declaration § XII, this court has considered and rejected another interpretation of Declaration § XII not advanced by Ludeke. It might be argued that § XII(A) restricts the use of condo units at the Heights; it expressly does so by limiting the "use" of such units to "residence for a single family, and no other purpose"; "single family" may not be accorded a broad definition such as "all the people living in the same household; a household," *Webster's New World Dictionary* 505 (2d ed. 1980), since the use of such condo units would not be limited; and therefore, § XII(A) must be construed to mean that condo units may not be occupied by anyone, owners and lessees alike, who do not have a consanguineous or similar relationship.

I reject that putative construction of Declaration § XII. Sections XII(A) and (B) have different purposes. Thus, Section XII(A) bans uses not consonant with single family residential use. On the other hand, Section XII(B) bans certain non-leasing persons, those not "immediate family" members of a lessee, from occupying a condo unit.

Section XII(A) plainly distinguishes single family residential use from other multi-family residential and commercial usage. Thus, after providing § XII(A)'s second sentence that "[e]ach Unit shall be used as a residence for a single family, and no other," it next states in the third sentence:

No industry, business, trade, occupation, or profession of any kind, commercial, religious, educational, or otherwise-designated, whether for profit or otherwise, shall be conducted, maintained, or permitted on any part of the property . . . .

The purpose of § XII(A) is further shown by the sentence preceding its first sentence:

No Unit or a portion of a Unit shall be *used* other than *for housing*
and related common purposes *for which the property was designed.*
(Emphasis added.) Applying the rule of construction, *noscitur a sociis*, re-
quiring that words be read in harmony with their context, *Turner v. Com-
monwealth*, 226 Va. 456, 460 (1983), the drafters' use of the term "single
family" was not intended to signify who might *occupy* a condo unit, but
rather that units might not be *used* for commercial and other uses inconsis-
tent with single family use. A dwelling suitable for use by a single family,
however, patently is not inconsistent with use by two unrelated adults.

Section XII(B), on the other hand, as discussed above, plainly declares
that only certain categories of persons may reside in, *viz.* "occupy," leased
units: (i) lessees; and (ii) their "immediate family" members. Its purpose is
also made clear by the following sentence prohibiting "transient" occu-
pancy.

This court, therefore, finds that, considered as a whole, Declaration
§ XII(A), although not intended to restrict those who might reside in a unit,
is intended to forbid or restrict uses inconsistent with a single family use,
especially commercial usage. Only § XII(B) places specific restrictions as
to classes of persons who might occupy a condo unit, and then only with
regard to non-leasing occupants of a unit. Both §§ XII(A) and (B) are re-
strictive. They simply effectuate different restrictions than Ludeke advo-
cates. And, they do not prohibit the occupancy of leasehold units by unre-
lated lessees.

Even if this court were to assume §§ XII(A) and (B) both referred to
occupancy, the covenant, as written, would still fail to prohibit unrelated
persons from living together. Clearly, different familial terms were used;
further, the term "single family" is broader than the term "immediate fam-
ily." The drafters' use of two different terms demonstrates that, at best, the
covenant is ambiguous. For example, "single family" might be interpreted
to mean "all the people living in the same house," or, in the alternative, "a
group of people related by ancestry or marriage," both of which appear as
definitions of the word "family" in the dictionary. *Webster's New World
Dictionary* 505 (2d ed. 1980).

Equity will enforce restrictions only when the meaning of the covenant
is clear. *Marks v. Wingfield*, 229 Va. 573, 577 (1985). A party seeking to
enforce a covenant has the burden of demonstrating the covenant's true
meaning; and, absent an indication of a more definite and certain meaning,
courts will resolve substantial doubt or ambiguity in the favor of the free
use of property. *Foley v. Harris*, 223 Va. 20, 26 (1982); *Friedberg v. Riv-
erpoint Bldg. Comm.*, 218 Va. 659, 665 (1977). Ludeke has made no

showing that a narrow definition of "single family" as used in § XII(A) is required. As a result, such a meaning of a restrictive covenant should be embraced only if that meaning, based on the language employed by the drafters, is unmistakable. Such an unmistakable intention cannot be gleaned from the language used in Declaration XII(A).

For the foregoing reasons, I find that occupancy by condo units at the Heights by unrelated lessees does not violate the Heights' restrictive covenant. Mr. Ludeke's motion for summary judgment is denied; Ms. Heintzelman's is granted.