# CIRCUIT COURT OF SHENANDOAH COUNTY

Homestead Properties
of Front Royal, Inc.

v.

Sky Bryce
Association, Inc., et al.

June 21, 1999

Case No. (Chancery) CH96-224

BY JUDGE DENNIS L. HUPP

Mr. Adamson and Mr. Ingold appeared before me on May 19, 1999, to argue the complainant's motion for summary judgment wherein the complainant challenges the validity of the "Amended Declaration of Protective Covenants and Restrictions of Sky Bryce Association, Inc." (Amended Covenants).

The Amended Covenants, bearing the date of November 6, 1997, were admitted to record in the Clerk's Office of the Circuit Court of Shenandoah County on November 7, 1997, in Deed Book 801, Page 614. Those covenants are signed and acknowledged by two persons, L. E. Hoole, Jr., as President of Sky Bryce Association, Inc., and Erik D. Topp, as Secretary of that corporation. Mr. Hoole's signature appears below a concluding paragraph, which I recite verbatim below:

> In Witness Whereof, the Board of Directors has caused this Amendment to the Declaration of Protective Covenants and Restrictions to be executed in its name on behalf of the Sky Bryce Association, Inc., following adoption of this Amendment to the Declaration of Protective Covenants and Restrictions pursuant to the required majority approval of the Members.

Mr. Topp made the following certification:

> I, the undersigned, do hereby certify: I am the duly elected and acting Secretary of the Sky Bryce Association, Inc., a Virginia non-stock corporation located in Shenandoah County, Virginia, established pursuant to a Declaration of Protective Covenants and Restrictions, dated May 18, 1969, applicable to Sections I through XII of Sky Bryce Subdivision, and by Declaration of Protective Covenants and Restrictions dated September 9, 1971, applicable to Section X of Sky Bryce Subdivision, recorded in the Circuit Court of Shenandoah County, Virginia, in Deed Book 262, at Page 275, and Deed Book 289, at Page 542, respectively, and
>
> That the foregoing Amendment to the Declarations of Protective Covenants and Restrictions constitutes the Declaration of Covenants, Conditions and Restrictions of such corporation, as duly adopted by the required approval of the membership.
>
> In Witness Whereof, I have hereunto subscribed my name and affixed the seal of the Corporation this 6th day of November, 1997.

Mr. Ingold has proffered the procedure used in adopting the Amended Covenants, and it appears that "ballots" were sent to lot owners whereon the lot owners could "approve" or "disapprove" of the proposed Amended Covenants by marking the appropriate choice and signing the ballot. The signatures were not acknowledged before notaries public or other officers. The ballot contains the following authorization:

> I/We authorize the Board of Directors to execute whatever instruments are necessary to reflect my approval and record the amendment if I/we and members constituting a majority of lot owners approve the amendment.

Mr. Ingold further proffers that a majority of the lot owners have approved the Amended Covenants; however, Mr. Adamson disputes this. I do not need to address this factual issue at this time and must reach it only if I find that the procedure used in amending the covenants was valid.

The original covenants are entitled "Declaration of Protective Covenants and Restrictions, Sky Bryce, Bryce's Mountain Resort, Inc." (Original Covenants), and they were admitted to record in the Clerk's Office of this Court on May 23, 1969, in Deed Book 262, Page 275.

Paragraph 31 of the original covenants provides, in part, as follows:

Except as hereinabove expressly provided with respect to the provision of Paragraph 25, all covenants, restrictions and affirmative obligations set forth in this Declaration shall run with the land and shall be binding on all parties and persons claiming under them for a period of twenty-five (25) years from January 1, 1968, after which time said covenants shall be automatically extended for successive periods of ten (10) years *unless an instrument signed by a majority of the then owners of lots affected by such covenants has been recorded, agreeing to change such covenants in whole or in part;* provided, however, that the covenant contained in Paragraph 30, above, shall remain effective in perpetuity.

(Emphasis added.)

(The specific provisions of Paragraphs 25 and 30 do not affect the determination of the issue presented here.)

In interpreting the restrictive covenants, we should give "plain meaning" to the words used. *Whitehurst v. Burgess*, 130 Va. 572 (1921). See also *Waynesboro Village v. BMC Properties*, 255 Va. 75 (1998), and *Ludeke v. Heintzelman*, 44 Va. Cir. 352 (Fairfax County 1998). Covenants restricting the free use of land are not favored and must be construed strictly. *Forbes v. Schaefer*, 226 Va. 391 at 400-01 (1983), quoting *Friedberg v. Riverpoint Building Committee*, 218 Va. 659 at 665 (1977). The party seeking to enforce the covenants has the burden of showing that they apply. *Id.* That being the case, it is only logical to place upon that same party the burden of showing the covenants' validity.

The original covenants provide, in effect, that they shall run in perpetuity "unless an instrument signed by a majority of the then owners of lots affected by such said covenants has been recorded, agreeing to change said covenants in whole or in part ... ." As I read the original covenants, giving the words used their plain meaning and strictly construing the same, the amending document must bear the signatures of a majority of the lot owners and that document, bearing those signatures, must be admitted to record. This procedure has not been followed in this case. Accordingly, I must find that the amended covenants are invalid and grant the complainant's motion for summary judgment.

I realize that circulating one copy of the Amended Covenants among the lot owners to secure the signatures of a majority of them would be quite cumbersome in a subdivision the size of Sky Bryce, and there may be ways to expedite or facilitate the amendment process; however, I do not believe that the one employed here passes muster under the terms of the original

covenants. Mr. Ingold has tendered a copy of Senate Bill 999 which was passed by the Virginia General Assembly in its 1999 session, amending Virginia Code § 55-515.1. He argues that the amendment process used in this case conforms with the provisions of the amended statute; however, he acknowledges that the statutory amendments will not take effect until July 1 of this year. Hence, the amended statute does not assist in my analysis.