

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00064-CV

———————————————————

JON AND LISA O'HARRA, KYLEE PETERSON, CHAD WILLIAMS, AND
DIEGO AND ROSARIO MALDONADO, Appellants

V.

W.R. COLLIER, TRUSTEE FOR THE SEPARATE TRUST FBO ROBERT
GREGORY COLLIER AND HIS DESCENDANTS, AND GREG COLLIER,
Appellees

---

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-335835-22

---

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

In three issues, two of which have subparts, Appellants Jon and Lisa O'Harra, Kylee Peterson, Chad Williams, and Diego and Rosario Maldonado appeal from a final declaratory judgment and permanent injunction issued after a nonjury trial in favor of Appellees W.R. Collier, Trustee for the Separate Trust FBO Robert Gregory Collier and His Descendants (the Trust), and Greg Collier. The controversy below involved the validity of certain easements retained in conveyances that were made by the Trust's predecessors in title and whether Appellants had wrongfully interfered with the Trust's exercise of the rights created by the easements.

The issues raised on appeal do not focus on Appellants' interference with the exercise of the easements but instead focus on the trial court's declaratory judgment that validated the easements, the award of attorney's fees, and the terms of the permanent injunction order. We resolve the issues as follows:

- With respect to Appellants' first issue challenging the trial court's declaratory judgment, we hold that

  o The access easements appurtenant at issue are reasonably certain in the description of their dominant estates and thus do not transgress the requirements of the statute of frauds or the statute of conveyances;

  o The access easements are presently effective, and their use is not subject to an unperformed condition precedent; and

  o Appellants have waived their argument that the judgment stripped them of rights in an equestrian easement at issue.

2

- With respect to Appellants' second issue challenging the trial court's award of attorney's fees, we hold that

  o The trial court did not err by ordering that Appellants are jointly and severally liable for the Trust's attorney's fees; the record does not support a contention that the Trust should have segregated its fee claim among each Appellant, and the claim that the fees should have been segregated among the Appellants was waived; and

  o The trial court did not err by ordering that Appellant Chad Williams was liable for fees because he joined in Appellants' declaratory-judgment claim and thus pleaded himself into liability for fees when the Trust counterclaimed under the Uniform Declaratory Judgments Act (the UDJA or the Act) to recover its fees.

- With respect to the third issue challenging the terms of the trial court's permanent injunction order, we agree that the trial court's permanent injunction order is not sufficiently specific in its description of the acts that Appellants are restrained from committing. We address this deficiency by remanding the case to the trial court for entry of a clarified order.

## II. Factual and procedural background

The initial portion of our background charts how the easements in controversy were created when portions of the underlying tract were conveyed and sets forth the conflicts between those claiming ownership of the easements and the owners of the property burdened by the easements.[1]

The tracts of real property that are the subject of the suit below had their genesis in a property known as the Hagood Ranch. That ranch was divided among

---

[1]Many of the facts recited are found in an "Agreed Stipulation of Facts."

3

various family members who served as joint owners. One tract conveyed from the whole of the Hagood Ranch is identified in the briefs as the Hagood tract, and Appellees' brief states that the tract consisted of approximately 142 acres. An adjacent tract to the Hagood tract conveyed from the whole of the Hagood Ranch is identified as the Rall tract and consisted of approximately 225 acres.

In 2004, portions of the Hagood and Rall tracts were conveyed to an entity that subsequently created a residential development named La Cantera West. Of the 142 acres of the Hagood tract, approximately 103 acres were conveyed to the developer. Of the 225 acres of the Rall tract, approximately 133 acres were conveyed to the developer.

Both the deeds conveying the portions of the Hagood and Rall tracts to the developer contained a number of easement reservations—two of which are the focus of the dispute below. Both deeds used identical language to describe the reservations of the easements.

The first reservation at issue is described as an access easement that burdened the property conveyed to the developer with an easement to provide access to the tracts retained by the Hagood and Rall grantors. The deeds verbally outlined the purpose of the access easements and provided both a metes-and-bounds description of them and a plat graphically depicting their extent. Both the Hagood and Rall grantors owned no property adjoining what they had conveyed other than the acreage

4

retained in their conveyances to the developer. The retained portions of the Rall and Hagood tracts were undeveloped at the time of the conveyance to the developer.

The second reservation in the deeds to the developer was of an equestrian easement that encircled the property that was eventually developed. This easement was also graphically described by a plat included in the deeds.

The portions of the property retained in fee from the Hagood and Rall tracts were later conveyed to W.R. Collier and subsequently conveyed by him to the Trust. The Trust has not subdivided the tracts and has no current plans to subdivide them.

The portions of the Hagood and Rall tracts conveyed to the developer became the La Cantera West residential development. That development "was formed by filing of Plat and applying Declarations." The plat approved for the development depicts the access easement and the equestrian easement. Various declarations were later filed that "establish[] and govern[]" the subdivision. The La Cantera Homeowners' Association, Inc. "operates and governs" the subdivision.

With one exception, Appellants are the individual plaintiffs in the suit below who purchased tracts within the development that are burdened with one of the access easements.[2] The deeds conveying the tracts to certain of the individual plaintiffs recited that their conveyances were subject to existing easements and that all the parties had actual knowledge of the easements at issue. The equestrian easement

---

[2]The ownership interest of Appellant Chad Williams is not stated in the stipulation. But a pleading alleges that he lives on one of the tracts burdened by an equestrian easement, and he testified to that fact.

5

burdens multiple individual lots within the development beyond those owned by Appellants.

Resistance to efforts to improve the access easements primarily produced the controversy litigated below. Because little of what the parties did to assert a right to utilize the easements or to oppose those efforts is relevant to the issues raised in this appeal, we will not detail the parties' actions. It is sufficient to say that the parties were at loggerheads.

To further avoid larding this opinion with unnecessary facts, we will not detail the procedural evolution of the litigation below and will outline only the alignment of the parties and their claims as of when this matter went to trial. Appellants were aligned as plaintiffs and sued the Trust and Collier, raising various declaratory-judgment claims challenging the validity of and seeking to establish the appropriate use of the access and equestrian easements. Appellants also pleaded claims for trespass, invasion of privacy, and permanent injunctive relief.

The Trust filed a counterclaim against the O'Harras; Peterson; Williams; and La Cantera Homeowners' Association, Inc. This counterclaim sought declaratory judgment with respect to the easements (including one seeking to establish the validity of one of the access easements), other claims, and permanent injunctive relief. The Trust also sought an award of attorney's fees under Texas Civil Practice and Remedies Code Section 37.009 that authorizes the recovery of attorney's fees under the Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

6

The Trust also filed a third-party action against the Maldonados. That action included a declaratory-judgment claim seeking to establish, among other things, that the other access easement was valid. The action also included a claim for attorney's fees under the Act.

The trial court heard the parties' disputes in a nonjury trial. Afterwards, the trial court signed a "Final Declaratory Judgment and Permanent Injunction." The judgment noted the various conveyances creating the easements at issue and how the Trust had obtained its title. The judgment then decreed the following:

> 5. The Hagood Access Easement, Hagood Equestrian Easement, Rall Access Easement, and Rall Equestrian Easement (collectively Easements) are valid and enforceable.
>
> 6. The Collier Trust is the owner of the Hagood and Rall dominant tenements and the Easements.
>
> 7. The Collier Trust has the present right to the use and enjoyment of the Easements to the full extent of the grants, including without limitation the present right to construct a 60-foot-wide road over and across Lots 51, 52, and 95, Block 3 of the La Cantera West Subdivision, and the right to maintain the Hagood and Rall Equestrian Easements.

The judgment next awarded permanent injunctive relief to the Trust by restraining Appellants and La Cantera Homeowners' Association from interfering "in any way" with the Trust's use of the easements "to the full extent of the grants." The injunction order then specified that Appellants were restrained from interfering with, "without limitation[,] the [Trust's] present right to construct a 60-foot-wide road over

and across Lots 51, 52, and 95, Block 3 of the La Cantera West Subdivision, and the right to maintain the Hagood and Rall Equestrian Easements."

The judgment awarded attorney's fees to the Trust and made Appellants and La Cantera Homeowners' Association, Inc. jointly and severally liable for the fee award. The judgment ordered that Appellants and La Cantera Homeowners' Association, Inc. take nothing on their claims.

No postjudgment motions were filed, and no findings of fact or conclusions of law were requested or made. Appellants filed a notice and an amended notice of appeal. La Cantera Homeowners' Association, Inc. has not appealed.

## III. Analysis

### A. Issue One

**1. Issue One/First Subissue—Appellants claim that the access easements are invalid because "they fail to comply with the statute of conveyances and [the] statute of frauds."**

The access easements are easements appurtenant. As explained below, such easements have two components: a dominant estate and a servient estate. Here, the servient estates are those portions of the Hagood and Rall tracts conveyed to the developer that are burdened with an easement to provide access to the property retained by the grantors of those tracts. The portions of the tracts that remained to the grantors after the conveyances and that are served by the access easements constitute the dominant estates. Appellants argue that the easements are invalid because they fail to describe the dominant estates with sufficient certainty to meet the

8

requirements of the statute of frauds and the statute of conveyances. We disagree: the dominant estates are described with the requisite level of reasonable certainty.

### a. We set forth the estates associated with an easement appurtenant and its characteristics.

A concise summary of both what an easement is and the component estates of an easement appurtenant is found in newly minted Texas Supreme Court precedent:

> A property owner may relinquish a portion of his right to exclude others through granting an easement. An easement is a nonpossessory interest that authorizes its holder to use property for a particular purpose. Easements may be express or implied. An easement appurtenant requires a dominant estate, which is granted an access right, and a servient estate, which is burdened by that right. Easements appurtenant may attach to, and run with, the property.

*425 Soledad, Ltd. v. CRVI Riverwalk Hosp., LLC*, No. 23-0344, 2024 WL 5249787, at *4 (Tex. Dec. 31, 2024) (footnotes omitted).[3]

---

[3]To the question of the construction of the easements, we apply the following basic rules of construction and standard of review:

> We apply basic principles of contract construction and interpretation when considering an express easement's terms. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 701 (Tex. 2002). In the case of an unambiguous writing, courts will give effect to the intention of the parties as expressed by or as apparent from the writing. *Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 428 (Tex. App.—Austin 1998, no [pet.]). The proper construction of an unambiguous agreement is a question of law for the court. *Phillips Nat. Gas Co. v. Cardiff*, 823 S.W.2d 314, 317 (Tex. App.—Houston [1st Dist.] 1991, writ denied). When an issue turns on a pure question of law, we apply a de novo standard of review. *Marsh v. Frost Nat'l Bank*, 129 S.W.3d 174, 177 (Tex. App.—Corpus Christi[–Edinburg] 2004, pet. denied).

In more aged precedent, the Texas Supreme Court outlined the characteristics of an easement appurtenant and explained how it is distinguished from its counterpart, the easement in gross, as follows:

> For there to be an easement appurtenant, either expressed in writing or implied, there must be a dominant estate and a servient estate. The easement attaches to the land of the dominant estate and not merely for the convenience of the owner thereof independent of the use of his land. The servient estate is subject to the use of the dominant estate to the extent of the easement granted or reserved. It generally takes the form of a negative easement: the owner of the servient estate simply may not interfere with the right of the owner of the dominant estate to use the servient estate for the purpose of the easement. This concept is in contrast to an easement in gross which attaches to an individual and is not dependent upon the existence of a dominant estate in land.

*Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1962) (internal citations omitted).

> **b.** **We set forth the standards that we apply to determine whether an easement is sufficiently described.**

The standards to determine whether an instrument sufficiently describes the easement conveyed are aptly summarized by the First Court of Appeals as follows:

> The [s]tatute of [f]rauds requires that a contract for the sale of real estate be in writing and signed by the person to be charged. Tex. Bus. & Com. Code Ann. § 26.01 . . . . The statute of conveyances likewise dictates that a conveyance of real estate be in writing and subscribed to and delivered by the conveyor. Tex. Prop. Code Ann. § 5.021 . . . . "An easement is an interest in land which is subject to the [s]tatute of [f]rauds." *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983). "If an easement does not sufficiently describe the interest conveyed, the conveyance is void." *Schuhardt Consulting Profit Sharing Plan v. Double*

*Robles v. Mann*, No. 13-14-00211-CV, 2016 WL 1613316, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 21, 2016, no pet.) (mem. op.).

10

*Knobs Mountain Ranch, Inc.*, 426 S.W.3d 800, 803 (Tex. App.—San Antonio 2014, pet. denied) (quoting *W*[.] *Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 264 (Tex. App.—Austin 2002, no pet.)). "'To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty.'" *Id.* (quoting *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972)).

Even if an easement is uncertain, however, a court is not authorized "to completely ignore the valuable right thereby granted if the clause is still susceptible of a reasonable construction as to its true intent and meaning." *See Hubert v. Davis*, 170 S.W.3d 706, 711 (Tex. App.—Tyler 2005, no pet.). "If enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the [s]tatute of [f]rauds." *Schuhardt Consulting Profit Sharing Plan*, 426 S.W.3d at 803; *Vinson v. Brown*, 80 S.W.3d 221, 227 (Tex. App.—Austin 2002, no pet.). With express easements, "an exact designation of location is unnecessary, as long as the tract of land that will be burdened by the easement is sufficiently identified," and inaction in failing to mark and establish the boundaries of an easement at the time the grant is made "does not cause the grant to fail." *Vinson*, 80 S.W.3d at 227. Language that clearly shows an intention to grant an easement is sufficient for the purpose; no special form or particular words need be employed. *See Hubert*, 170 S.W.3d at 711.

*BSG–Spencer Highway Joint Venture, G.P. v. Muniba Enters., Inc.*, No. 01-15-01109-CV, 2017 WL 3261365, at *5–6 (Tex. App.—Houston [1st Dist.] Aug. 1, 2017, no pet.) (mem. op.) (footnote omitted).

### c. We set forth the open question regarding whether a dominant estate even need be described.

Texas courts have struggled with whether vague descriptions of the servient estate are adequate. *See, e.g.*, *Pick*, 659 S.W.2d at 637; *Target Corp. v. D&H Props., LLC*, 637 S.W.3d 816, 836 (Tex. App.—Houston [14th Dist.] 2021, pet. denied). Here, no

11

one challenges the adequacy of the description of the servient estates of the access easements. Indeed, the servient estates are described with scientific precision textually, by a metes-and-bounds description, and by a "plat" graphically describing the easements.

Instead, our question is the adequacy of the description of the dominant estates, i.e., the estate served by the easement appurtenant of the servient estates. The parties cite no Texas case dealing with how a dominant estate must be described, and we have found none. But out-of-state precedent exists on the question. The holdings of the out-of-state cases range from requiring no description of the dominant estate to requiring a description of reasonable certainty.[4]

---

[4]*See City of Lakewood v. Armstrong*, 419 P.3d 1005, 1010–11 & n.2 (Colo. App. 2017) (stating that when the servient estate is adequately described, "the lack of an expressly described dominant estate does not render the easement invalid"); *Hyde Rd. Dev., LLC v. Pumpkin Assocs., LLC*, No. CV075005120S, 2010 WL 2682555, at *6–7 (Conn. Super. Ct. May 26, 2010) (not designated for publication) ("Obviously, it is sound conveyance practice to identify the dominant estate in a deed, but generally this is not essential to the creation of an easement appurtenant." (quoting J. Bruce & J. Ely, *Law of Easements and Licenses in Land*, § 2:3 (2010))), *rev'd on other grounds*, 21 A.3d 945 (Conn. App. Ct. 2011); *Kopetsky v. Crews*, 838 N.E.2d 1118, 1126 (Ind. Ct. App. 2005) ("It stands to reason, then, that if we can identify the dominant tenement with reasonable certainty *based upon* the language of the deed, we are not required to find a direct description of that tenement in the conveyance."); *Oakes v. Hattabaugh*, 631 N.E.2d 949, 951 (Ind. Ct. App. 1994) (noting that a valid easement must establish "with reasonable certainty the easement created and the dominant and servient tenements"); *Wilkinson, LLC v. Scott & Cindy Erler, LLP*, 491 P.3d 704, 709–10 (Mont. 2021) (stating that identification of the dominant tenement must be "ascertainable with reasonable certainty"); *Garza v. Grayson*, 467 P.2d 960, 962 (Or. 1970) ("We have previously held that an appurtenant easement may be created without specifically designating the dominant estate which is benefited by the easement."); *Tusi v. Jacobsen*, 293 P. 587, 588 (Or. 1930) ("The principle established by *Hopper v. Barnes*, [45 P. 874,

12

For example, a Colorado case held that the central component of an easement appurtenant is the description of the servient estate and that an instrument adequately describing that estate should not be held void because of a defect in the description of the dominant estate. *Hornsilver Circle, Ltd. v. Trope*, 904 P.2d 1353, 1356 (Colo. App. 1995). *Hornsilver* dealt with a reservation that misdescribed the tract constituting the dominant estate. The Colorado Court of Appeals found this error of no consequence for the following reasons:

> No particular words are necessary for the grant of an easement, but the instrument must identify with reasonable certainty the easement created and the dominant and servient tenements. Words [that] clearly show the intention to give an easement are adequate to demonstrate its creation, provided the language in the instrument is sufficiently definite and certain in its terms. *Dunlap Inv[s.] Ltd., v. Hogan*, . . . 650 P.2d 432 ([Ariz.] 1982); *see* 7 *Thompson on Real Property* § 60.03(a)(7) (Perm. ed. 1994). The writing must contain a description of the land that is to be subjected to the easement with sufficient clarity to locate it with reasonable certainty. *Germany v. Murdock*, . . . 662 P.2d 1346 ([N.M.] 1983); *see* 25 Am. Jur. 2d *Easements* § 20 (1966).

> The issue whether an easement is invalid for failure to describe accurately the dominant tenement when the servient tenement and the easement are described accurately and specifically has not been directly addressed by our courts.

> However, a similar issue was presented in *Isenberg v. Woitchek*, . . . 356 P.2d 904 ([Colo.] 1960). There, the plaintiff contended that,

875–76 (Cal. 1896)], has been applied in a number of later cases," which held that "an easement conveyed by an express grant was . . . appurtenant to a dominant tenement by reason of facts appearing aliunde the deed, and notwithstanding that no description of such dominant tenement was contained in the grant."); *Lozier v. Blattland Invs., LLC*, 100 P.3d 380, 385 (Wyo. 2004) ("Furthermore, the dominant tenement need not be described within the instrument, so long as it exists and can be identified.").

13

although the dominant and servient tenements were described, no easement was granted because the location of the easement was inadequately described in the deed. The court rejected plaintiff's contention, stating that lack of a specific description of the location of the easement did not affect the validity of the easement, particularly when the conduct of the parties had over a period of time located it.

The inaccurate description of the dominant tenement as "Lot B" is a less significant deficiency than the one at issue in *Isenberg*. Here, the deed stated, in accurate detail, the size, dimensions, type of use, and location of the easement on the servient tenement, as well as the precise legal description of the servient property. The only deficiency in the reservation was the inaccurate legal description of the lot owned by the holder of the easement.

Cases from other jurisdictions have held that, if the servient tenement is described with reasonable certainty, then the easement is not void for vagueness. *See Germany v. Murdock*, supra; *Allen v. Duvall*, . . . 316 S.E.2d 267 ([N.C.] 1984); *Garza* . . . , . . . 467 P.2d 960 . . . . *But see Oakes* . . . , 631 N.E.2d 949 . . . ; *Maywood*[-]*Proviso State Bank v. Village of Lisle*, . . . 599 N.E.2d 481 ([Ill. App. Ct.] 1992).

We find most persuasive those cases which hold that an easement is valid provided the servient tenement is accurately identified. Here, the language of the reservation accurately and specifically described the servient tenement as "Lot 7, Block 1, Vail Village, Eighth Filing" and located the easement in a specific sixty-foot by twenty-foot area on that lot. Thus, we reject [appellees'] contention that the easement is void simply because the deed inaccurately described the dominant tenement as "Lot B."

The purchaser of a servient tenement, with actual or constructive notice that it is burdened with an easement in favor of other property, ordinarily takes the estate subject to the easement. *Bear v. Bear*, . . . 377 P.2d 538 ([Colo.] 1962). Unless otherwise provided by statute, a purchaser has notice of, and is bound by, recitals in conveyances or other instruments of transfer in the chain of title. *Page v. Fees-Krey, Inc.*, 617 P.2d 1188 (Colo. 1980).

14

*Id.*; *see also Armstrong*, 419 P.3d at 1010–11 (citing *Hornsilver* to support its conclusion that "the lack of an expressly described dominant estate does not render the easement invalid"). We glean from this discussion in *Hornsilver* that the burden placed on the servient estate is the central feature of an easement appurtenant. Thus, under *Hornsilver*, after taking property with knowledge of the burden on the servient estate, claiming some lack of description of the dominant estate will not suffice to invalidate an easement appurtenant and free the servient estate from the burden to which it was clearly subject.

> **d.  We set forth why we conclude that the dominant estate is described with reasonable certainty.**

Here, *Hornsilver* and the other cases cited above cast suspicion on an argument that an easement appurtenant must be invalidated solely because of a failure to describe the dominant estate. But we need not make that broad of a holding. The dominant estates of the access easements at issue below are described with reasonable certainty.

Appellants hinge their argument—that the dominant estates are not adequately described—on a sentence that textually describes each access easement as follows: "[t]his [e]asement appurtenant is for the benefit of other property which is owned by Grantor[] and which adjoins the servient tenement on the southwest boundary." Focusing solely on this language, Appellants spin as a mystery what the dominant estate could be:

No further definition or identification of the dominant tenement within the four corners of the pertinent deeds, Rall Easement or Hagood Easement, exists. No metes or bounds, no boundaries, no shape, no acreage, no lot or block number, no tract or plat reference, no deed identification or reference, no city, no county, and no landmarks or addresses. Nothing. It is merely identified as the "other property which is owned by the Grantor[] and which adjoins the servient tenement on the southwest boundary" – presumably, whatever that amount of acreage and boundaries of that acreage may have been on the date of the conveyance of the deeds.

Appellants attempt to create obscurity when none exists. The language referenced by Appellants provides two components of the dominant estates' description. It states who owns the dominant estates—the grantors in the deeds containing the provisions. The language then states the general location of that property: it "adjoins the servient tenement on the southwest boundary."

When other parts of the deed that reserve the access easements appurtenant are consulted (such parts are ignored by Appellants), no mystery remains of what constitutes the dominant estates. Again, both the Rall and Hagood conveyances to the developer of La Cantera West were of smaller tracts carved from larger tracts. Indeed, the legal descriptions in each deed described the conveyed tracts as "being a portion of that certain tract of land recorded in" a particular instrument described by volume and page in the Tarrant County deed records.

In turn, the metes-and-bounds description of the access easements designates the servient estate as being "a portion of a tract of land" conveyed to the Rall and Hagood grantees and references the same instrument by volume and page that is

16

referenced in the legal description of the tracts being conveyed in fee to the developer in the deed. One of the legal descriptions also bears the notation "SEE ATTACHED EXHIBIT 'B,'" which is the plat that graphically describes the access easement.

Then, in the plats of the easements, below the southwest boundary of the servient estate is a notation stating respectively, "MARTHA H. RALL REMAINDER OF" and "ROY HAGOOD REMAINDER OF." Following each of these notations is a volume-and-page reference to an instrument in the "D.R.T.C.T." (presumably Deed Records Tarrant County, Texas). The volume and page of these instruments corresponds to the instrument referenced in the legal descriptions in the deeds of the underlying tract from which the fee tracts conveyed to the developer were carved. For clarity, we attach the plats as Appendix A and Appendix B to this opinion and highlight their references to the "remainder."[5]

Again, we operate under a standard that "even if an easement is uncertain, . . . a court is not authorized 'to completely ignore the valuable right thereby granted if the clause is still susceptible of a reasonable construction as to its true intent and

---

[5]We see no ambiguity in the use of the word "remainder." Indeed, case law uses the same terminology to describe the dominant estate when it is the remaining portion of an underlying tract from which the servient estate is conveyed. *See Hazel v. Lonesome Ranch Prop. Owners Ass'n*, 656 S.W.3d 468, 489 (Tex. App.—El Paso 2022, no pet.) ("We conclude this language sufficiently identified (1) the servient estate, which is Lot 28, or the land where the roadway easement is located, and (2) the dominant estate, which is the remainder of the subdivision because the property owners obtained the benefit of the roadway easement."); *see also Jones v. Fuller*, 856 S.W.2d 597, 600 (Tex. App.—Waco 1993, writ denied) (op. on reh'g) ("After severance of the estate property, the remainder of the Warrick Martin Survey was approximately 236.97 acres.").

meaning.'" *BSG–Spencer Highway Joint Venture*, 2017 WL 3261365, at *6. To ensure that the valuable right of the easement is not cavalierly ignored, we apply a liberal view of how it must be described, and "[i]f enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the [s]tatute of [f]rauds." *Id.*

Here, we have a reasonable certainty of what the dominant estates are. The textual description of the access easement tells where to look for them—property owned by the grantors "which adjoins the servient tenement on the southwest boundary." The legal descriptions of both the tracts being conveyed to the developer refer to those tracts as being carved out of a larger tract described in a particular instrument, with the same instrument referenced in the easements' metes-and-bounds description. The plat of the servient estate then reveals what property of the grantors adjoins the servient estate at the location given in the textual description because the notations "remainder of" in the plats reference the same volume and page of the instrument that was used to describe the underlying tracts from which the tracts conveyed to the developer were carved, i.e., the whole of the Rall and Hagood tracts. The picture created by the combined effect of the included information makes it reasonably certain that the dominant estates are the "remainder" of what the Rall and Hagood grantors retained from the larger tracts out of which were carved the smaller tracts being conveyed to the developer.

18

### e. The cases cited by Appellants are inapposite.

The cases primarily relied on by Appellants give us no pause that our holding is correct. Appellants cite *City of Port Arthur v. Badeaux* that involved a sewage easement of ten-foot width when "[t]here [was] nothing in the description within itself or by referring to some existing writing, data[,] or objects on the ground by which the length of direction of the 10[-]foot strip may be determined at all, much less with reasonable certainty." 425 S.W.2d 658, 659 (Tex. App.—Beaumont 1968, writ ref'd n.r.e.). What light this holding throws on how to determine whether a dominant estate is described with reasonable certainty is unclear.

Then Appellants cite three cases and state that they illustrate the principle that "if the writing and other identified writings do not sufficiently describe the property to be conveyed, then the conveyance violates the [statute] of frauds and is voidable." *See Pick*, 659 S.W.2d at 637; *Troxel v. Bishop*, 201 S.W.3d 290, 300 (Tex. App.—Dallas 2006, no pet.); *Eland Energy, Inc. v. Rowden Oil & Gas, Inc.*, 914 S.W.2d 179, 186 (Tex. App.—San Antonio 1995, writ denied). We have no quibble with the stated principle, but Appellants provide no guidance on how it applies to a construction of the easements at issue.

Finally, Appellants leave us with the following:

There also exists a long string of cases concerning void or voidable conveyances for uncertainty of legal descriptions. For example, in *Lewis v. Adams*, the [c]ourt held that a deed purporting to convey land, which describes it only by quantity and as being part of a larger tract, with nothing to identify what specific portion of the larger tract is intended to

19

be conveyed, was void for uncertainty of description. . . . 979 S.W.2d 831 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

Again, it is unclear how the cited principle applies to the specificity required for the description of a dominant estate or to our conclusion that the description of dominant estates that is derived from information contained in the deeds is reasonably certain.

### f.     We overrule the first subpart of Appellants' first issue.

It is an open question regarding how the dominant estate in the conveyance of an easement appurtenant need be described or if it need be described at all. Appellants do not address this question. We do not reach it either because we conclude that the dominant estates are described with reasonable certainty, and Appellants' attacks on the description of the dominant estates ignore the full detail of how they are described.

We overrule the portion of Appellants' first issue that attacks the adequacy of the description of the dominant estates.[6]

---

[6]As part of this issue, Appellants imply that they are arguing that the easement is invalid because the deed reserving it is not signed by the *grantee*. They cite no authority for the proposition nor do they make any argument to support it. To the extent that the argument is raised, it does not appear to be an argument that Appellants carry forward by actually arguing it. The argument is waived because it is inadequately briefed. *See Fredonia State Bank v. Gen. Am. Life Ins.*, 881 S.W.2d 279, 284 (Tex. 1994).

**2. Issue One/Second Subissue—Appellants claim that a condition precedent to the use or effectiveness of the access easements has not been met.**

In a single paragraph consisting of five sentences, Appellants argue that a condition precedent to the use of the access easements by the grantors in the Rall and Hagood conveyances was the execution and recordation of a "restriction" for the benefit of the La Cantera West subdivision. The argument ignores that the language at issue creates a condition precedent that has not yet been triggered, i.e., the subdivision of the dominant estates' tracts.

> We employ the following rules of interpretation to easements:
>
> "We apply basic principles of contract construction and interpretation when considering an express easement's terms." *Marcus Cable Assocs. . . . ,* 90 S.W.3d [at] 700 . . . (citing *DeWitt Cnty. Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 100 (Tex. 1999)); *see Davis v. Johnston,* No. 03-10-00712-CV, 2012 WL 2499472, at *15–17 . . . (Tex. App.—Austin June 28, 2012, no pet.) (mem. op.) (applying basic principles of contract construction and interpretation to determine express easement's meaning and scope). The "starting point" is "the easement's plain language." [*Sw. Elec. Power Co. v.*] *Lynch,* 595 S.W.3d [678,] 689 [(Tex. 2020)] (citing [*Marcus Cable Assocs.*], 90 S.W.3d at 700). "The contracting parties' intentions, as expressed in the grant, determine the scope of the conveyed interest." [*Marcus Cable Assocs.*], 90 S.W.3d at 700–01 (citing *DeWitt Cnty. Elec. Coop.,* 1 S.W.3d at 103). "When the grant's terms are not specifically defined, they should be given their plain, ordinary, and generally accepted meaning." *Id.* at 701 (citing *DeWitt Cnty. Elec. Coop.,* 1 S.W.3d at 101).

*Austin JSB, Ltd. v. Otwell Realty, Ltd.,* No. 03-22-00459-CV, 2023 WL 5311524, at *4 (Tex. App.—Austin Aug. 18, 2023, pet. denied) (mem. op.). Obviously, the most important analytical question when dealing with a condition precedent is identifying

what the condition precedent is; simply put, "[a] condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 404 (Tex. 2022).

Appellants' argument highlights one clause in the relevant paragraphs of the deeds that retained the easements appurtenant: "the due execution and recording of the Restriction **shall** be a condition precedent to the right of any owner of the dominant tenement to use the foregoing ingress and egress easement or any street or roads within the La Cantera West subdivision." Read in isolation, the clause appears to make the restriction a precondition to the use of the access easements.

The failing of the argument is that it plucks language out of context. The two paragraphs that contain the language highlighted by Appellants explain the access easements as follows:

> *A right-of-way easement appurtenant for ingress and egress across the parcel conveyed by this deed* to Grantee (the "servient tenement"), including construction of a full service road, and such related uses as may be or become reasonably necessary and/or desirable *including, but not limited to existing uses* and to provide access to residential lots that may be developed by Grantor hereafter. . . .

> This easement appurtenant is for the benefit of other property which is owned by Grantor[] and which adjoins the servient tenement on the southwest boundary ("dominant tenement"). *Notwithstanding the foregoing grant of easement, it is understood and agreed by Grantor that Grantee intends to develop the Property into a residential subdivision with private streets.* The subdivision is to be known as La Cantera West. *If Grantor or any heir, successor, or assign of Grantor*[] *subdivides in any way the dominant tenement or any portion thereof into smaller lots, tracts, or parcels, then the foregoing ingress and egress easement shall not be effective unless and until a restrictive covenant (the "Restriction") constituting a covenant running with the land and binding each*

22

*owner of the dominant tenement, and their heirs, successors, and assigns, is duly executed and recorded in the Real Property Records of Tarrant County, Texas*[,] *providing for the proration of the costs of maintaining the streets in La Cantera West.* The Restriction shall provide that in the event of such subdivision of the dominant tenement and construction of a road on and across the foregoing easement property to access said subdivision, each owner of all or any part of the dominant tenement must agree to pay to the homeowner[s'] association governing La Cantera West its [pro rata] share of all of the association's costs of street maintenance, repair, and replacement. The proration shall be based on the percentage that each separate lot, tract, or parcel of land in the Property or dominant tenement bears to the total of all separate lots, tracts, or parcels of land in the Property and the dominant tenement. [For example only: if there are 110 lots in La Cantera West and the dominant tenement is subdivided into 40 lots, then the percentage share of each of the 40 lots or tracts within the dominant tenement for street maintenance is .67%, being 1 lot divided by 150 total lots.] The Restriction shall provide that it is enforceable by the homeowner[s'] association governing La Cantera West or by any owner of the Property or any part thereof, and shall provide further for assessments to pay said costs and an enforceable lien on each lot, tract, or parcel of the dominant tenement to secure that lot, tract, or parcel owner's obligation to pay the assessments. Prior to recording the Restriction must be approved by Grantee, such approval not to be unreasonably withheld, conditioned, or delayed. *The due execution and recording of* **the Restriction** *shall be a condition precedent to the right of any owner of the dominant tenement to use the foregoing ingress and easement or any streets or roads within the La Cantera West subdivision.* [Emphases added.]

The first paragraph of the reservation describing the easement shows that the easement becomes effective to serve existing uses of the dominant estate. The second paragraph carries forward the present effectiveness of the right by noting that "[t]his easement appurtenant is for the benefit of other property which is owned by Grantor[] and which adjoins the servient tenement on the southwest boundary ('dominant tenement')." The provision then signals that "[*n*]*otwithstanding* the

23

foregoing grant of easement"—a phrase that reinforces that there is an existing grant—there may also be a future use should the dominant estates be subdivided. [Emphasis added.] As highlighted in the quotations, the second paragraph speaks to that future use of the dominant estates. It is the act of subdividing the dominant estate that triggers the need for the restriction. That is logical: should the dominant estate be subdivided, the owners of the subdivided tracts within it should pay for the wear and tear they will create by using the access easement. But this trigger for the filing of the restriction had not occurred; indeed, the parties stipulated that neither dominant estate had been subdivided.

Appellants ignore the language stating that the condition requires the filing of the restriction and focus solely on the last sentence of the paragraph, but in their quotation of it, they again ignore a crucial aspect of its verbiage. The word "restriction" is capitalized in the fourth sentence of the paragraph, thus making it a defined term. Restriction as a defined term then carries forward from its first use in the second paragraph to the sentence that Appellants highlight. Thus, the sentence highlighted by Appellants references a Restriction that must be filed only upon the dominant estates' being subdivided—again, an event that has not yet occurred. Appellants' selective quotation ignores the context of the sentence they quote and also ignores the sentence's use of a defined term. These failures devastate the implication that they try to create—that there is a general condition precedent to file the

24

restrictions in order to make the use of the access easements effective from their inception.

We overrule the portion of Appellants' first issue arguing that a necessary condition precedent to the use of the access easements had not occurred.

### 3. Issue One/Third Subissue—Appellants claim that they have an ownership interest in the equestrian easement.

Appellants claim that the trial court's judgment in some way deprives them of rights in the equestrian easement. The sum total of their brief's argument is as follows:

> The trial court's judgment states that Appellees own the Equestrian Easement. The judgment thus appears to make Appellees' interest in the Equestrian Easement[] exclusive to Appellees only. This, however, ignores the fact that the Developer[—]WHSS Development Partners, Ltd.[—]granted an easement to the HOA and owners of the lots in the subdivision by way of the supplemental Declarations. Moreover, the HOA and the owners of the lots in the subdivision have continuously used the Equestrian Easement since the development of La Cantera Phase I and Phase II. The trial court's judgment thus effectively strips Appellants and the other lot owners in the Subdivision of their valuable property rights in the use and enjoyment of the Equestrian Easement. [Record reference omitted.]

We have indulged Appellants by trying to give their arguments the benefit of the doubt and by interpreting them liberally, but the argument made under this subissue is so deficient that we conclude the argument is waived. Other than one citation to the record, the argument provides no record references. It is completely bereft of authority. The generality of this argument puts the burden on this court to formulate arguments for Appellants, to search the record and authorities for citations to support

25

the arguments, and then to test the arguments we have formulated against counterarguments that again we will have to formulate. That is the parties' job, not this court's.[7] Appellants are represented by experienced counsel who are familiar with the briefing standards. The generality of the argument causes us to conclude that it is simply a throw-away argument, and we will not further delay the disposition of this case by permitting rebriefing.

Having addressed the three component arguments of Appellants' first issue, we overrule the remainder of that issue.

## B.    Issue Two

### 1.    Issue Two/First Subissue—Appellants claim that a joint-and-several award of attorney's fees against them is error.

Appellants title the first subissue of their second issue as follows: "The trial court abused its discretion by failing to determine that the award of fees was both equitable and just" as required by the UDJA. The body of the argument, however, is not that the trial court failed to make a required finding but that it should not have imposed joint-and-several liability on Appellants for the attorney's fees awarded to the Trust. The kernel of the argument appears to be that the Trust should have segregated its fee claim as to each Appellant. The record does not establish that the

---

[7]We have explained in detail this court's view of the principles that govern briefing waiver and why allowing rebriefing after waiver puts an excessive burden on the court and the parties. *See De Los Reyes v. Maris*, No. 02-21-00022-CV, 2021 WL 5227179, at *8 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.).

fee claim should have been segregated, and the argument is waived because no objection was made that proof of fees should have been segregated.

Appellants' argument begins with a very general one-paragraph discussion of the standards for awarding fees under the UDJA that references us to a multifaceted review but fails to itemize or apply the facets. From the case citation in the argument, we glean that Appellants are advocating for the standard established by *Bocquet v. Herring*:

> In sum, then, the [UDJA] entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law. It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, *e.g.*, *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997), or to rule without supporting evidence, *Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). Therefore, in reviewing an attorney fee award under the Act, the court of appeals must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary[] or when the award was inequitable or unjust. Unreasonable fees cannot be awarded, even if the court believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees. This [multifaceted] review involving both evidentiary and discretionary matters is required by the language of the Act.

972 S.W.2d 19, 21 (Tex. 1998).

Here, there is no argument that the fees awarded were not reasonable and necessary; those facts were stipulated to by Appellants' counsel. Instead, it is Appellants' argument that the trial court committed an error of law by imposing joint-

27

and-several liability for the fees; another short—almost citationless—paragraph in Appellants' brief makes this point:

> The Maldonado [A]ppellants were brought into this case as third-party defendants by Appellees. They were thus forced into this suit and required to bring any compulsory claims. As a result, the trial court imposed upon them joint[-]and[-]several liability for approximately $125,000.00 in Appellees' attorneys' fees. Moreover, each of the Appellants owns separate and distinct interests in land with no control over what their co-appellants do with their respective interests. It is arbitrary and unreasonable (inequitable and unjust) to place the potential burden for the entirety of Appellees' fees on the individual shoulders of parties who although similarly situated, each have separate and distinct property interests at play. [Record reference omitted.]

Groping to find the legal theory that Appellants rely on, it appears from the case citation in an accompanying footnote that they are arguing that the Trust was required to segregate its fee claim among each of them. They cite *Houston Livestock Show & Rodeo, Inc. v. Hamrick* and its holding that "a plaintiff must either segregate the fees among the several claims and parties or establish that the claims are sufficiently interrelated." 125 S.W.3d 555, 585 (Tex. App.—Austin 2003, no pet.).

If this is Appellants' legal theory, other than their conclusory statements, they offer no argument regarding why the Trust's fee claim should have been segregated. The Dallas Court of Appeals has held that segregation of a fee claim among multiple parties is not required when "the claims at issue arose out of the same transaction involving the same contract and . . . the prosecution of [the] claims . . . involved essentially the same facts." *Wakefield v. Rubio Digit. Forensics, LLC*, No. 05-22-00780-CV, 2023 WL 8050475, at *3 (Tex. App.—Dallas Nov. 21, 2023, no pet.) (mem. op.).

Appellants each joined a declaratory-judgment claim attacking the validity of the access easements and requested the court to construe all the easements at issue, and their brief certainly shows a group effort. Thus, the argument that "each of the Appellants owns separate and distinct interests in land with no control over what their co-appellants do with their respective interests" appears to turn a blind eye to the fact that they each litigated the same issues with respect to the easements and provides no explanation for why a defense to this unified approach warrants a segregation of fees.

Beyond the failure to explain why the fee claim should be segregated, Appellants reference no objection to a failure to segregate. As we recently held, "'[I]f no one objects to the fact that the attorney's fees are not segregated . . . , then the objection is waived.'" *Cyphers v. Cunningham*, No. 02-23-00148-CV, 2024 WL 3819315, at \*4 (Tex. App.—Fort Worth Aug. 15, 2024, no pet.) (mem. op.). Without an objection, Appellants have waived their argument that appears to be predicated on the failure to segregate a fee claim.

We overrule the portion of Appellants' second issue attacking their joint-and-several liability for attorney's fees.

### 2. Issue Two/Second Subissue—Chad Williams claims that the trial court erred by making him liable for attorney's fees.

In the second aspect of Appellants' second issue, Chad Williams argues that he was uninvolved in the declaratory-judgment proceeding and was only included in the judgment as a party subject to injunctive relief. Williams's argument continues that an

award of injunctive relief alone does not make him liable for attorney's fees. This argument ignores that Williams sought declaratory relief and that the Trust's counterclaim against him sought a recovery of fees under the UDJA.

The live petition in this matter is "Plaintiffs' Fifth Amended Petition and Request for Permanent Injunction and Declaratory Judgment." This petition describes and denominates Williams as follows:

> Chad Williams was not named in the original lawsuit; however, he was added as a Defendant in Cause No. 236-335925-22. That case was consolidated with this case and going forward he will be referred to as *Plaintiff* Chad Williams and he has appeared through counsel of record. [Emphasis added.]

Later in the pleading, "plaintiff" Williams is described as living "on approximately 4 acres in the La Cantera West residential subdivision at [XXXX] Yucca Flats Trail." In turn, the petition alleges that "[t]he property owned by the Plaintiffs and the Defendants [is] subject to certain Reservations/Deed Restrictions that provide for certain easements," which includes access easements and the equestrian easements.

Later, the live petition seeks a declaratory judgment as follows:

25. *Plaintiffs* hereby incorporate the preceding paragraphs by reference.

26. *Plaintiffs* seek a declaration from the [c]ourt that:

> (1) No document of record filed with . . . Tarrant County allows the use of the equestrian easement for any use other than equestrian use.

> (2) The Rall and Hagood Easements are invalid per the statute of frauds and statue [sic] of conveyances.

30

(3) No motorized vehicle use or any type of maintenance can occur on the equestrian easement without prior approval from the La Cantera HOA.

(4) No document of record on file with Tarrant County currently allows Defendants to install any type of road across Plaintiffs['] property.

27. *Plaintiffs* are entitled to their attorneys' fees and costs of [c]ourt under [the] Texas Civil Practice and Remedies Code. [Emphases added.]

The petition nowhere indicates that Williams is excluding himself from the request for declaratory relief.

The Trust's live counterclaim names Williams as a party. The counterclaim also seeks declaratory relief to construe and establish the validity of the access easements. And the counterclaim alleges that the Trust "is entitled to be awarded equitable and just costs and attorney's fees as provided in . . . Texas Civil Practice[] and Remedies Code Section 37.009."

Thus, Williams's assertion that he was uninvolved in the declaratory-judgment aspect of the preceding below is belied by the live petition. Instead, on the face of the pleading, Williams is included as a party seeking declaratory relief and fees for that claim. In turn, a counterclaim seeks fees from him under the provisions of the UDJA.

Rather than making himself an innocent bystander to the declaratory-judgment claims, Williams postured himself to be the subject of a fee claim under the Act. How a declaratory-judgment counterclaim filed in response to a plaintiff's declaratory-judgment claim triggers the right to recover fees under the Act was recently outlined by the First Court of Appeals as follows:

31

Under the [UDJA], the trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code [Ann.] § 37.009. But because the [UDJA] is not available to settle disputes already pending before the trial court, *BHP Petrol. Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) [(orig. proceeding)], a mirror-image counterclaim for declaratory relief generally will not support an award of attorney fees, *Save Our Springs All., Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Dir*[*s.*], 198 S.W.3d 300, 318 (Tex. App.—Texarkana 2006, pet. denied).

An exception to the mirror-image rule is when the plaintiff requests declaratory relief. *Id.* If the plaintiff requests declaratory relief, the mirror-image rule does not prohibit the trial court from awarding attorney fees, even if the defendant's counterclaim for declaratory relief merely duplicates the claims already raised by the plaintiff. *Id.*; *see Castille v. Serv. Datsun, Inc.*, No. 01-16-00082-CV, 2017 WL 3910918, at *11 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, no pet.) (mem. op.) ("[A] trial court is not prohibited from awarding attorney's fees to a defendant that asks the court to make a corresponding contrary declaration in a case where the plaintiffs have also brought a claim for declaratory relief."). This is because the [UDJA] authorizes trial courts to determine that it is equitable and just to award attorney's fees to either party, so a defendant who raises a mirror-image counterclaim in response to a plaintiff's declaratory-judgment claim cannot be said to have raised the counterclaim solely to pave the way for an award of otherwise[ ]impermissible attorney's fees. *Castille*, 2017 WL 3910918, at *11.

Whether attorney's fees are available under the . . . Act is a question of law, which we review de novo. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) [(op. on reh'g)]; *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 705–06 (Tex. App.—Houston [1st Dist.] 2007, no pet.). But we review the attorney fee award itself for an abuse of discretion. *Feldman v. KPMG LLP*, 438 S.W.3d 678, 686 (Tex. App.—Houston [1st Dist.] 2014, no pet.). An award is an abuse of discretion if it was made arbitrarily, unreasonably, or without regard to guiding legal principles. *Id.* In determining whether an award was an abuse of discretion, we view the evidence in the light most favorable to the trial court's ruling, indulging every presumption in its favor. *Id.*

32

*Winner v. Jarrah*, No. 01-19-00115-CV, 2020 WL 477222, at *7 (Tex. App.—Houston [1st Dist.] Jan. 30, 2020, no pet.).

Simply, Williams pleaded himself directly into the line of fire for an attorney's fee recovery. The live petition shows him as a plaintiff seeking declaratory relief to invalidate and construe the easements. His opponent filed a mirror-image counterclaim seeking to validate those easements, and that counterclaim seeks fees under the UDJA. The rule outlined in the quoted holding of the First Court of Appeals subjected Williams to liability for fees under the UDJA. A complete portrayal of the record demonstrates that the trial court did not abuse its discretion by including Williams in its fee award.

Having addressed the two component arguments of Appellants' second issue, we overrule that issue.

## C. Issue Three—Appellants challenge the specificity of the trial court's permanent injunction order.

Appellants challenge the specificity of the trial court's permanent injunction order with the statement that the order "is unsupported by any factual recitation of its necessity and is fatally nonspecific [by] failing to spell out the details of compliance in clear, specific[,] and unambiguous terms so that Appellants can readily know exactly what duties or obligations are imposed upon them." As with other arguments in their

33

brief, Appellants carry forward only a portion of the challenge that is directed at the order's specificity.[8] We agree that the order lacks the necessary specificity.

The restraint of the injunction order provides in one paragraph that

> IT IS FURTHER ORDERED that Plaintiffs Jon and Lisa O'Harra and Kylee Peterson and Third-Party Defendants La Cantera Homeowners' Association, Inc., Diego and Rosario Maldonado, and Chad Williams are permanently enjoined from impeding, preventing, or otherwise interfering in any way with the Collier Trust, its agents, representatives, contractors, employees, invitees, and licensees in the maintenance, use, and enjoyment of the Easements to the full extent of the grants, including without limitation the present right to construct a 60-foot-wide

---

[8]Further, the relief sought by the Trust does not appear to be ancillary to a damages claim. Thus, a requirement found in Texas Rule of Civil Procedure 683 to state the reasons for the injunction's issuance may not apply in this matter:

> We have recognized that Rule 683's requirement "that reasons for issuance of an injunction be stated applies only to ancillary injunctive relief." *City of Houston v. Morgan Guar. Int'l[] Bank*, 666 S.W.2d 524, 536 (Tex. . . . App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *see also Alexander Schroeder Lumber Co. v. Corona*, 288 S.W.2d 829, 835 (Tex. . . . App.—Galveston 1956, writ ref'd n.r.e.). In addition, other courts have held that Rule 683 "applies only to temporary injunctions, in which the relief ordered is ancillary to the ultimate relief sought, and not to permanent injunctions." *Shields v. State*, 27 S.W.3d 267, 273 (Tex. App.—Austin 2000, no pet.); *accord* [*Cook's*] *Bryan, Inc. v. State*, 459 S.W.2d 682, 688 (Tex. . . . App.—Houston [14th Dist.] 1970, writ ref[']d n.r.e.) ("Rule 683 does not require that the court state a reason for a judgment for permanent injunction, as distinguished from an ancillary, temporary injunction."); *see also Qaddura v. Indo–European Foods, Inc.*, 141 S.W.3d 882, 892 (Tex. App.—Dallas 2004, pet. denied) ("[Rule 683] applies only to temporary restraining orders and temporary injunctions, not permanent injunctions.").

*Livingston v. Livingston*, 537 S.W.3d 578, 597 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Because Appellants do not carry forward their argument that the order is flawed for failing to state the reasons why injunctive relief is necessary, we need not address this question any further. *See* Tex. R. App. P. 47.1.

road over and across Lots 51, 52, and 95, Block 3 of the La Cantera West Subdivision, and the right to maintain the Hagood and Rall Equestrian Easements.[9]

Appellants direct their challenge to the order's specificity as follows:

> The injunction simply incorporates language from the Rall and Hagood deeds granting the easements and states that Appellants are enjoined from interfering with Appellees' use and enjoyment of the easements. Essentially, what constitutes a violation is anything that Appellees may or may not subjectively consider interference or what Appellees' use and enjoyment includes.

Later, Appellants reveal their true complaint about the order by focusing on its use of particular words as follows: "There is no limit or clarity, beyond the subjective determination of either Appellants or Appellees about what may or may not constitute an interference with 'use and enjoyment' to the 'full extent of the grants.'" The Trust responds in essence that Appellants' challenge is petty and that "[a] court order need not be full of superfluous terms and specifications adequate to counter any flight of fancy a contemnor may imagine in order to declare it vague."

In determining whether a permanent injunction order is sufficiently specific, we turn to the Fourteenth Court of Appeals's reference to guidance given by the Texas Supreme Court almost seventy years ago in *San Antonio Bar Association v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956). *See Hous. Laureate Assocs., Ltd. v.*

---

[9]Again, the order defines the term "Easements" in a prior provision, which states that "[t]he Hagood Access Easement, Hagood Equestrian Easement, Rall Access Easement, and Rall Equestrian Easement (collectively Easements) are valid and enforceable."

*Russell*, 504 S.W.3d 550, 569–70 (Tex. App.—Houston [14th Dist.] 2016, no pet.). As

the Fourteenth Court noted,

> In [*San Antonio Bar Association*], the Texas Supreme Court acknowledged
> its prior holding that an injunction "must be as definite, clear[,] and
> precise as possible and when practicable it should inform the defendant
> of the acts he is restrained from doing, without calling on him for
> inferences or conclusions about which persons might well differ and
> without leaving anything for further hearing." The court added that "the
> injunction must be in broad enough terms to prevent repetition of the
> evil sought to be stopped, whether the repetition be in form identical to
> that employed prior to the injunction or (what is far more likely) in
> somewhat different form calculated to circumvent the injunction as
> written."

*Id.* at 569 (citations omitted).

Our question is whether the terms of the order are specific enough when it

enjoins Appellants

> from impeding, preventing, or otherwise interfering *in any way* with the
> . . . Trust . . . *in* [*its*] *maintenance, use, and enjoyment of the Easements to the full
> extent of the grants*, including without limitation the present right to
> construct a 60-foot-wide road over and across Lots 51, 52, and 95, Block
> 3 of the La Cantera West Subdivision, and the right to maintain the
> Hagood and Rall Equestrian Easements. [Emphases added.]

We conclude that they are not.

We are guided by an opinion that, though it is not on all fours, invalidated an

injunction order that simply instructed the enjoined party "to desist and refrain" from

breaching restrictive covenants. *See Tarr v. Lantana Sw. Homeowners' Ass'n*, No. 03-14-

00714-CV, 2016 WL 7335861, at *11 (Tex. App.—Austin Dec. 16, 2016, no pet.)

(mem. op.), *judgm't withdrawn, appeal dism'd*, 2017 WL 1228870 (Tex. App.—Austin

Mar. 30, 2017, no pet.) (mem. op.). *Tarr* held that the stated restraint lacked the required specificity because "it d[id] not even cite the specific provision of the contract not to be violated, let alone specify the acts that would constitute a violation of that provision." *Id.* Further, "whether certain acts constitute[d] a breach of the Declaration of Covenants would [have] require[d] inferences and conclusions about which persons might disagree and would [have] require[d] further hearing." *Id.* (citing *Villalobos v. Holguin*, 208 S.W.2d 871, 875 (Tex. 1948)). Here, the order's restraint of not interfering "in any way . . . to the full extent of the grants" is of the same unguided generality as in *Tarr*, requiring Appellants to infer what conduct might transgress the easements in any way and to their full extent.

And the language "including without limitation the present right to construct a 60-foot-wide road over and across Lots 51, 52, and 95, Block 3 of the La Cantera West Subdivision, and the right to maintain the Hagood and Rall Equestrian Easements" does not aid.[10] Certainly, these words impose a specific restraint, but that

___

[10]Appellants have not appealed the trial court's finding that

> [t]he Collier Trust has the present right to the use and enjoyment of the Easements to the full extent of the grants, including without limitation the present right to construct *a 60-foot-wide road over* and across Lots 51, 52, and 95, Block 3 of the La Cantera West Subdivision, and the right to maintain the Hagood and Rall Equestrian Easements. [Emphasis added.]

restraint merely augments the broader and unspecified one that states "to the full extent of the grants."[11]

---

[11]We note the access easement is described as "[a] right-of-way easement appurtenant for ingress and egress across the parcel conveyed by this deed to Grantee (the 'servient tenement'), including construction of a full service road, and such related uses as may be or become reasonably necessary and/or desirable" and consists of "a 60-foot-wide strip." The nature of the right conveyed does not appear to be controversial:

> Case law reflects that the plain and ordinary meaning of the term "easement and right-of-way" has become generally accepted. When asked to determine the scope of an express easement, the Austin court concluded that the use of the word "right-of-way" in conjunction with "easement" delineated the scope and purpose of the grant. *Lakeside Launches*[*, Inc. v. Austin Yacht Club, Inc.*], 750 S.W.2d [868,] 871 [(Tex. App.—Austin 1988, writ denied).] The Austin court observed that "[r]ight-of-way, when used alone, can have more than one meaning: it may denote either a right of passage or the right-of-way strip of land itself." *Id.* (citing *S.H. Oil & Royalty Co. v. Tex. & New Orleans R.R. Co.*, 295 S.W.2d 227, 230–31 (Tex. . . . App.—Beaumont 1956, writ ref'd n.r.e.)). Therefore, the court concluded, the only reasonable reading of "easement and right-of-way" in the grant at issue was one in which the term "right-of-way" was used to mean "right-of-passage over and across all of the land lying between the 670-foot contour line and the waters of Lake Travis." *Id.* The Corpus Christi[–Edinburg] court arrived at a consistent conclusion:

>> We conclude that the only reasonable reading of "easement and right-of-way" in this grant is one in which the term "right-of-way" is used to mean right-of-passage over and across all the land described in the instrument, without a conveyance of title from the Navigation District to the County.

> *Long Island Owner's Ass'n v. Davidson*, 965 S.W.2d 674, 684 (Tex. App.—Corpus Christi[–Edinburg] 1998, pet. denied) (citing *Lakeside Launches*, 750 S.W.2d at 871). Although the facts and issues in the cases before the Austin and Corpus Christi[–Edinburg] courts vary from those in the case

To address the injunction order's lack of specificity, we will not dissolve the injunction but instead will remand to the trial court for clarification—a remedy proposed by Appellants. *See Gilbreath v. Horan*, 682 S.W.3d 454, 552, 566–67 (Tex. App.—Houston [1st Dist.] 2023, pets. denied) (op. on reh'g) (holding that statements in permanent injunction were impermissibly vague and remanding for trial court to define or clarify the meaning of various terms or to delete or modify the terms). Further, looking to precedent from temporary injunction appeals, appellate courts may remand a matter to address discrete defects in an injunction order because "reversing and remanding to the trial court to modify such specific defects was preferable to dissolving the injunction." *Totus Grp., LLC v. Pruitt Fam. Living Tr.*, No. 05-23-01222-CV, 2025 WL 510034, at *10–11 (Tex. App.—Dallas Feb. 14, 2025, no pet.) (mem. op.). We follow this course because of the narrowness of the grounds of our reversal. The remand of this matter will also allow the trial court to address the issue of whether existing infrastructure and improvements within the servient estates "encroach" as Appellants claim.

---

at bar, both cases are instructive as to the general treatment and understanding of the term used in the instant case. In both cases, "easement and right-of-way" was understood to mean a right to pass over described land. *Id.*; *Lakeside Launches*, 750 S.W.2d at 871.

*Greenwood v. Lee*, 420 S.W.3d 106, 113 (Tex. App.—Amarillo 2012, pet. denied).

With respect to an equestrian easement, its characteristics are described as a nonexclusive easement, which does not limit the property owner's use of the land as long as that use does not interfere with the easement. *Perlini v. Seminole Woods Cmty. Ass'n, Inc.*, 582 So. 2d 1221, 1224 (Fla. Dist. Ct. App. 1991).

We sustain Appellants' third issue to this extent.

## IV.  Conclusion

Having overruled Appellants' first and second issues in their entirety, we affirm the trial court's declaratory judgment that established the validity of the access easements and its award of attorney's fees.  Having sustained Appellants' third issue on the ground that the injunction lacks specificity, we grant relief but only to the extent of reversing the judgment in part and remanding this matter to the trial court for the sole purpose of clarifying its permanent injunction order.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  May 8, 2025

# Appendix A



41

# Appendix B



42